Llla Mae **ATKINSON**, Respondent,

v.

**COCA–COLA BOTTLING COMPANY**, of
Poplar Bluff, a corporation, Appellant.

No. 7343.

Springfield Court of Appeals.

Missouri.

Jan. 24, 1955.

O. A. Tedrick, John A. Casey, Poplar
Bluff, for appellant.

Wangelin & Friedewald, Poplar Bluff,
for respondent.

**McDOWELL, Presiding Judge.**

This appeal is from a judgment for $750 damages in favor of plaintiff caused by drinking contaminated coca cola manufactured and sold by defendant.

The petition was originally in two counts. Count II was dismissed and trial was had on count I in the Circuit Court of Butler County with the aid of a jury.

Count I of plaintiff's petition alleged that defendant is a corporation with its principal office in Poplar Bluff, Missouri, and engaged in the business of manufacturing, bottling, selling and distributing coca cola to retail trade to be sold to the public; that it sold to W. C. Smith, a grocery man in Poplar Bluff, coca cola to be resold and represented it to be a healthful, refreshing and wholesome beverage.

The petition alleged that on the 18th day of May, 1952, plaintiff purchased a bottle of coca cola from W. C. Smith which had been sold to Smith by defendant and, believing it to be pure, harmless, wholesome and safe to drink, swallowed a portion of the contents and, as a result, became violently ill immediately thereafter; that the contents of the bottle were found to contain various indescribable foreign matter and what appeared to be a part of a cigar; that as a result of drinking part of the coca cola plaintiff became violently nauseated, vomited and was seized with cramps, pain and misery in and about her stomach, abdomen and head and received a violent shock to her entire nervous system, and (other symptoms alleged).

It alleged that plaintiff was compelled to consult a doctor, lost several days from her ordinary work, has been compelled to take medicine since that time and has suffered great pain and mental anguish; has suffered with high fever which has caused her to be in a weakened condition; that she has lost and will continue to lose wages and income and will continue to be mentally upset because of the drinking and swallowing of the contents of the bottle; that she has expended large sums of money for medical care; that the contents of the bottle were placed therein by the defendant and it had at all times complete and exclusive control of the bottle and its contents after the time the bottle was capped by defendant until sold and delivered to W. C. Smith and that the cap or seal placed thereon by defendant remained continuously on the bottle until it was removed by plaintiff at the time she drank a portion of the contents.

It alleged that defendant, by selling the beverage, knew and intended that it would be consumed by the public and did thereby warrant and represent it to be a pure, wholesome and safe drink for all persons who might purchase it and that plaintiff did in fact rely upon such warranty and representations at the time she purchased and drank a portion of the contents of said bottle.

The prayer prayed for $15,000 damages.

Defendant's answer to count I admits it is a corporation with its principal office in Poplar Bluff as pleaded; that it is engaged in the manufacturing, bottling, selling and distributing coca cola to retail trade to be sold to the public as pleaded, and that the same was represented to be a healthful, refreshing and wholesome beverage, but denied each and every other allegation of the petition.

Much of the evidence is undisputed. There is no dispute that defendant is engaged in the manufacturing of coca cola in Poplar Bluff and furnished all the coca cola used in retail sales by W. C. Smith; that defendant's agents would deliver coca cola approximately twice a week to the Smith grocery and that Smith kept approximately 18 to 20 cases on hand. There is no dispute that this coca cola, when delivered, was placed on a screened back porch in cases and that Smith would place the coca cola as needed in a Pepsi-Cola cooler, used for cooling the drinks before sale to the public. Smith stated that it would be possible to open the bottles and replace the cap so as not to be noticeable but that he never at any time placed in the cooler bottles which had been partly used. And that he sold the bottle of coca cola to plaintiff but did not re-

member whether he or she opened it. Smith testified he kept the door of the screened porch locked; that he not only had coca cola stored on this porch but drinks furnished by others, Grapette, Dr. Pepper, 7-Up, and Royal Crown.

There is no dispute that plaintiff, together with Mrs. Crozier, on Sunday, May 18, 1952, came to the Smith store and purchased the coca cola in question; that plaintiff drank a half or two-thirds of the bottle and something hit her in the mouth; that she went behind the counter and had Smith examine the contents of the bottle and he testified that it contained "trashy stuff"; that the bottle was recapped and plaintiff took it with her and the contents of the bottle has remained recapped from that time until it was produced in the trial. There seems to be no dispute that the foreign substance, in part at least, was a part of a cigar.

The testimony on the part of plaintiff is undisputed that when she left the Smith store, after drinking the coca cola, she went to her father-in-law's home in Poplar Bluff and within an hour's time was so sick she could hardly sit up; that she would gag but could not vomit; that she left Poplar Bluff for her home in Morehouse and was so sick she could hardly drive the car; that after reaching her home she was confined to bed or lying around on the bed for some days; that she had high fever and would just roll from side to side. She testified she tried to wear it out but that she was so sick at her stomach and ached all over she went to Dr. Sarno, a physician at Morehouse, who prescribed pills and a liquid; that she continued this medicine for some time but did not get along well and went to Dr. McClure at Sikeston.

She did not remember the dates of treatment by Dr. McClure but he testified the first trip was September 20, 1952; that he treated her seven different times. He stated that she said she had been ill for four months with pain in chest, general aches, temperature and nausea.

Plaintiff testified that Dr. McClure diagnosed her trouble as undulant fever and gave her medicine to take; that he has treated her to the present time except one time when he was not present, she had the hospital call Dr. Sargent of Sikeston.

We believe it unnecessary to set out all of the complaints but that plaintiff's testimony is in substance that she was a healthy woman prior to the drinking of the coca cola; that she worked in a restaurant in Morehouse and earned $21 per week; that since the drinking of the coca cola she has been able to hold a position for only a few days at a time; that she continues to have fever and the troubles complained of every week or two; that in the year 1953 she earned around $400 and in 1954 had been unable to earn any money and is still suffering from the same troubles she did after drinking the coca cola.

The testimony showed that plaintiff was examined by Dr. A. F. Brookreson of Poplar Bluff at the request of defendant and, a short time before the trial, was examined by Dr. J. Lester Harwell of Poplar Bluff.

The medical testimony on the part of plaintiff showed that plaintiff had lost weight from 180 to 157 pounds; that she was suffering from undulant fever. There was conflict as to the medical testimony regarding whether or not undulant fever germs could be transmitted by drinking coca cola containing a part of a cigar or as to whether or not plaintiff's intestinal trouble found by the doctors could be caused by foreign substance being in the coca cola.

We think Dr. Harwell's testimony is that undulant fever is usually caused or transmitted by the drinking of milk or using butter but that after one contracts the disease it may be spread by a germ left on a cigar and that the germ would not be killed by the contents of the coca cola, but would live and could be transmitted to plaintiff if she drank a part of the contents containing the germ from the bottle. We think the substance of the other medical testimony was that, in their opinion, that was not probable.

Defendant's testimony was to the effect that in the process of manufacturing coca cola such care is used that would prevent

a possibility of parts of cigars or other foreign materials being capped in the bottle. Exhibits showing in detail each step taken in the process of manufacturing were offered in evidence. The method of cleansing the bottles, the disinfectants used, and the different degrees of heat through which these bottles passed before the prepared drink was inserted and the impossibility of outside materials being able to reach the bottles in this process, all were shown to the jury. The method of packing and delivering the coca cola was testified to, yet, defendant's evidence failed to show that foreign materials might not be in the bottles regardless of all of the processing. Every witness offered by the defendant would say that it was not impossible for something to be left in the bottle.

Defendant's medical evidence, by both Dr. McClure and Dr. Brookreson was strong, that in the opinion of the doctors, plaintiff's troubles were not caused by the drinking of the coca cola with a part of a cigar in it.

Dr. Brookreson was of the opinion that a germ, bacteria or amoeba would be killed as a result of being bottled and being capped within a bottle of coca cola.

Defendant also offered in evidence some two or three different instruments testified to as being on the market for decapping and recapping coca cola. This testimony was not clear as to when these gadgets were placed on the market or if the general public might have had access to them at the time of the sale of this coca cola.

We will refer to appellant as defendant and respondent as plaintiff.

The first assignment of error complains that plaintiff failed to make a submissible case. That the burden of proof was upon plaintiff to show that the drinking of the coca cola in question caused the illness complained of, citing Hamilton v. St. Louis-San Francisco R. Co., 318 Mo. 123, 300 S.W. 787; Pietraschke v. Pollnow, Mo.App., 147 S.W.2d 167, and Anton v. St. Louis Public Service Co., 335 Mo. 188, 71 S.W.2d 702.

The first case cited was an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., that required the proof of negligence to make a case. The law is declared in this case that the evidence must at least point to the essential facts which the jury is required to find in order to sustain the verdict. The court made this statement on page 792 of 300 S.W.:

" 'The burden was on plaintiff to show that defendant's negligence, as specified above, was the proximate cause of his injuries. Under familiar rules, plaintiff was entitled to prevail if the evidence and the inferences that a jury might legitimately draw from it were fairly and reasonably sufficient to warrant a finding in his favor.' * * *

" 'If the injury may have resulted from one of two causes, for one of which and not the other, the defendant is liable, the plaintiff must show with reasonable certainty that the cause for which the defendant is liable produced the result, and if the evidence leaves it to conjecture, the plaintiff must fail in his action. * * *' " (See cases cited.)

The second case cited, likewise, holds that a verdict cannot rest upon mere conjecture but must be based upon substantial evidence, and a mere scintilla of evidence will not suffice. The law is declared that where evidence, in a negligence action, justifies two inferences and, one of the inferences would justify verdict for plaintiff and the other would not, plaintiff's case must fail.

The last cited case holds that a verdict cannot be based on conjecture.

The law, as declared in the authorities cited by plaintiff under this allegation of error, is correctly stated.

■ This action was tried by a jury. The appellate court is bound by the findings of fact by the jury if there is substantial evidence to support such findings.

■ In Bray v. St. Louis-San Francisco Ry. Co., Mo.App., 259 S.W.2d 132, 139, the law is declared that where facts are in dispute or evidence is such that fair-minded men may draw different inferences, the

question is one for the jury. Only where there is complete absence of probative facts to support the conclusions reached by the jury do we have reversible error. If there is evidentiary basis for the jury's verdict the judgment must stand. Ford v. Louisville & N. R. Co., 355 Mo. 362, 196 S.W.2d 163.

It is also held in this case that where the sufficiency of the evidence is considered plaintiff's evidence is taken as true, together with all reasonable inferences that can be drawn therefrom and any evidence offered by defendants that supports plaintiff's case. Young v. Wheelock, 333 Mo. 992, 64 S.W.2d 950; Hillhouse v. Thompson, 362 Mo. 700, 243 S.W.2d 531; Winters v. Terminal R. Ass'n of St. Louis, 363 Mo. 606, 252 S.W.2d 380, 384; Palmer v. Lasswell, Mo.App., 267 S.W.2d 492.

It has been held that a submissible case cannot be made by a jury finding a verdict by piling inference upon inference. Strother v. Chicago, B. & Q. R. Co., Mo.Sup., 188 S.W. 1102, 1105. That the burden of proof has not been sustained when the evidence proved a state of facts from which, under the law, liability and non-liability may be equally drawn. State ex rel. Dutcher v. Shelton, 249 Mo. 660, 156 S.W. 955, 965. This rule has, however, been criticized and our Supreme Court in Winters v. Terminal R. Ass'n of St. Louis, supra, 252 S.W. on page 385, states that when the court speaks of inference upon inference it means that the inference cannot be based upon evidence which is uncertain and speculative or which raises merely a conjecture or possibility.

It is' defendant's contention, in its argument, that there was no evidence that defendant's plant was improperly operated or poorly equipped; that the help was insufficient and no evidence to show or indicate that the coca cola in question was not produced according to the highest standards; that there was no evidence that·the substance in the bottle was there when delivered to Smith or that the bottle had not been opened after it reached Smith's custody; that the jury had to base their findings upon circumstantial evidence, and that it could not do so upon the testimony without showing that the bottle contained the substance when it left defendant's custody.

It is also contended that the evidence does not show plaintiff's illness was the result of the drinking of the coca cola. It was admitted that plaintiff had undulant fever but the defendant contends that the proof is insufficient that the disease was contracted from drinking the coca cola in question.

Following the law as stated in Norman v. Jefferson City Coca-Cola Bottling Co., Mo.App., 211 S.W.2d 552, 556, 557, we find, in the instant case, that defendant admitted the coca cola sold by Smith to plaintiff was manufactured and delivered to Smith for sale to the public; the evidence is undisputed that the bottle of coca cola purchased by plaintiff was obtained from among other bottles of coca cola delivered by defendant to Smith, from a Pepsi-Cola box where it was cooled in the Smith grocery store; that plaintiff drank the contents thereof and immediately complained to Smith and had him examine it; that when the bottle was obtained it was securely capped and opened either by Smith or plaintiff; that the cigar was in it at the time of purchase. We deem this substantial evidence from which the jury could infer that the cigar or foreign substance was in the bottle at the time defendant delivered it to Smith. It will be noted that defendant's testimony no where denied that it would be possible for a part of the cigar to have been in the bottle, even though it passed through the machinery by which it was made. There was testimony that there had been articles come through and not removed by defendant's process of making.

▉ There was substantial evidence from which the jury could have found that the bacteria or disease germ, which causes undulant fever, could have lived in the coca cola as capped by defendant and could have been transmitted by the drinking of the coca cola. It is true that some of the medical testimony was to the effect that the germ could not have been so transmitted and could not

live while in the bottle as prepared by the manufacturer. The weight of the testimony, however, was for the jury.

We cannot agree with the argument of defendant that the evidence was not substantial; that plaintiff's condition was not the direct and proximate result of the drinking of the coca cola. She became seriously sick within an hour after the drinking thereof and this condition existed continuously up until the time of the trial. Loss of weight, inability to work, weakness, fever, all which lead to a reasonable conclusion that plaintiff's condition was the result of the drinking of the coca cola. Besides the medical testimony justifies the jury's inference that such was so. We find there is no merit in the contention made by the defendant under this allegation of error that there was no substantial probative proof to sustain the finding of the jury.

In allegation of error No. 2, defendant contends that the trial court erred in admitting plaintiff's exhibit "A", which was the remainder of the contents in the coca cola bottle purchased.

Defendant does not mention this assignment of error in its argument and we take it that it has abandoned such assignment.

An examination of the authorities cited by defendant do not support its contention.

Defendant's allegation of error No. 3 complains that the trial court erred in refusing to sustain a motion for directed verdict at the close of plaintiff's testimony and at the close of all of the testimony on the ground of insufficiency of the evidence.

We have passed upon that assignment.

Likewise, we find there is no merit in assignment No. 4. First, we hold that the assignment is abandoned for want of citing of authority and a failure to make an argument. It is not sufficient to cite to the court a key number in the Missouri Digest.

Likewise, under assignment of error No. 5, defendant makes no argument and an examination of the instruction shows that all of the instructions taken together properly declare the law. Of course it is always admissible to offer a converse instruction but such contention is not argued by defendant, and, therefore, is not before us.

Assignment of error No. 6 contends that the judgment is excessive.

To support this contention defendant cites Strawn v. Coca-Cola Bottling Co., Mo.App., 234 S.W.2d 223; Holyfield v. Joplin Coca Cola Bottling Co., Mo.App., 170 S.W.2d 451, and Norman v. Jefferson City Coca-Cola Bottling Co., Mo.App., 211 S.W.2d 552.

The authorities cited in no way sustain the contention. In fact, they say nothing about excessive damages.

In Leatherman v. Coca-Cola Bottling Co., Mo.App., 254 S.W.2d 436, 438, this court, passing upon excessive damages, passed upon these same authorities and found no expression in them on the question.

We hold that the damages were not excessive in view of the loss of services, pain, suffering and long illness of which plaintiff still suffers.

It is true there was not much in the evidence as to loss of employment but there was evidence that plaintiff was prevented from carrying on any continuous occupation. We find against defendant upon this assignment of error.

Judgment affirmed.

STONE and RUARK, JJ., concur.