BARKLEY, (RONALD v.) See Case No. 12,031.

BARKSDALE, (LEWIS v.) See Case No. 8,317.

## Case No. 997.

### BARLEY v. CHICAGO & A. R. CO.

[4 Biss. 430.] [1]

Circuit Court, N. D. Illinois. Jan. Term, 1865.

RAILROAD COMPANIES—TRACKS ON PUBLIC STREET —RATE OF SPEED—BACKING TRAINS—LOOK-OUT —MEASURE OF DAMAGES—FORMER RECOVERY.

1. Where a railroad company is rightfully running its trains on a public street, it must do

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

so in such a way as to be consistent with the safety of persons and property on the street.

2. Irrespective of any city ordinance, the speed must be such as to permit the stoppage of the train within a reasonable time, and the train must be provided with all usual means and appliances for stopping.

3. When the engine is backing a train there should be a look-out to give notice of any persons or obstructions.

[See Whiton v. Chicago & N. W. R. Co., Case No. 17,597.]

4. If there is steam or smoke upon the track great care and vigilance is required.

[See Barron v. Illinois C. R. Co., Case No. 1,053; Holmes v. Oregon & C. R. Co., 5 Fed. 75; Maryland v. Baltimore & P. R. Co., Case No. 9,219.]

5. In allowing damages for the killing of a child the jury cannot allow anything for the suffering or wounded feelings of the parents: they can only allow for actual pecuniary loss. If the family is poor, the fact that the boy would probably have early commenced to assist in supporting the family may be taken into consideration.

6. A recovery in a former action for medical attendance, expenses, loss of service and time before his death, does not affect the damages recoverable under the statute for death.

At law. This was an action on the case under the statute by Patrick Barley, administrator of the estate of Benjamin Barley, deceased, [against Chicago & Alton Railroad Company,] to recover damages for the death of said Benjamin by the alleged negligence of the defendant.

The statute of Illinois is as follows:

"§ 1. Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case, the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

"§ 2. Every such action shall be brought by and in the names of the personal representatives of such deceased person, and the amount recovered in every such action shall be for the exclusive benefit of the widow and next-of-kin of such deceased person, and shall be distributed to such widow and next-of-kin in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate; and in every such action the jury may give such damages as they shall deem a fair and just compensation, with reference to the pecuniary injuries resulting from such death to the wife and next-of-kin of such deceased person, not exceeding the sum of $5,000: provided, that every such action shall be commenced within two years after the death of such person." 1 Gross, St. p. 60; Rev. St. 1874, p. 582.

In March, 1863, a train of defendant, consisting of an engine and three freight cars, was proceeding north on Beach street in the city of Chicago, and the son of the plaintiff, a boy between seven and eight years of age, was standing upon the track, having a bag of shavings on his arm. The engine was pushing the cars, and was on the south end of the train, so that the first car struck the boy and he was crushed under the wheels and finally died. [Verdict for plaintiff.]

A. W. Church, for defendant.

DRUMMOND, District Judge, (charging jury.) Under the statute in force in this state, the father, having taken out letters of administration, sues the defendant to recover damages for the loss which has been sustained, in the language of the statute, "by the next-of-kin" in consequence of the death of the child by the alleged negligence of the defendant.

The first question to be determined, therefore, is, Was it the negligence of defendant that caused his death?

Beach street was a public street and the defendant had a track laid on it. No law has been introduced on the subject, but it has been taken for granted that the defendant was rightfully on the street with its engine and cars. It being a public street, however, it is clear that it could be used by the defendant only in such way as to be consistent with the safety of persons and property. While the defendant has a right to use the street, the citizens of the town, and of the country also, have a right to use it in passing over it with their persons and property. There was no particular portion of the street upon which the track of the road was to be laid. The railroad company simply had the right to use it for the purpose of trains which might be going over the road. The right of the user must be consistent with that of the public on the street.

Without undertaking to determine whether the ordinances of the city could prescribe the speed of the engine and cars so as to render it binding upon the public and upon the defendant,—as by declaring that a certain rate of speed was or was not negligence,—still it is clear that in running an engine and cars upon a street, it should be only with such speed as might enable the engineer, in case of obstruction by persons passing, to stop his train within a reasonable time. The train should be provided with the usual means and appliances to stop it; there should be a proper and sufficient lookout kept upon the train, and I think that would be, in such a case as this, a person watching where the danger was. The locomotive was at the rear end of the cars, they preceding the locomotive. I think there should be a person watching the track so as to enable the engineer to know when there was an obstruction upon it, so that

the train could be stopped in a reasonable time, if it should be such as could not leave the track. To take an illustration: If a person on the train were to see any one walking along the track or crossing, there would be a reasonable presumption that that person would get out of the way of the train, but if there was a drunken man lying on the track, who would not be presumed to get out of the way, in such a case it is clear that the conduct of those having the management of the train ought to be entirely different from what it would be in the other case.

We are to take the facts as they are at the time, in order to prescribe the true rule of diligence on the subject; so if there was a little helpless child on the track, the conduct of those having the management of the train should be different,—there should be greater caution.

The evidence shows that the train was running from seven to eight miles an hour. It seems to be thought that is a reasonable speed, fast enough, at any rate in a populous city, over a frequented thoroughfare. It is as fast as a train ought to be permitted to go, as it seems to me. But it is for the jury to determine whether the train was running at an unusual or improper speed. If it was, then the defendant was guilty of a wrongful act.

So in relation to the look-out. Were those on the train watchful and careful in observing the track? One of the witnesses, who was sitting down upon the top of the car, says he was looking eastwardly—not where the train was going. Another says he was in another car looking north. Was he under such circumstances as to enable him to see, and did he see, what was on the track? If there was negligence in this respect, did it contribute to the accident?

Then, after it was ascertained that there was something upon the track, was there proper skill and diligence used in order to arrest the train as soon as possible, and if not, did that contribute to the result?

These are questions proper for you to determine under all the circumstances of the case.

It is said that there was steam and smoke which shut out the view of those on the train and prevented them from seeing the track as they otherwise would have done. The only remark that the court would make in reference to that is, that if it were so, it was incumbent on them to redouble their diligence and to run the train with greater caution. They ought to know, I think, when they are running upon our streets, where they are going. They ought to see, so far as the circumstances of the case will permit, what they are going to encounter.

The next question is, was the boy himself guilty of any negligence which contributed in any substantial degree to the destruction of his own life?

There is a very embarrassing question in all cases of this kind. It is almost impossible for a court to lay down any fixed or permanent rule to guide you upon a subject such as this. The language of the law is, that the jury shall give such damages as have been sustained by the next-of-kin in dollars and cents by the destruction of the life of the person. It must be with reference to the pecuniary loss—I mean the loss which has been sustained in this case by the next-of-kin—that investigation is to be made and conclusion arrived at.

This was a boy of tender years. The pecuniary injury which was sustained must, of course, be with reference, almost exclusively, to prospective benefits which might have been derived by the continuance in life of the boy. At the time, he probably was rather a burden than a benefit pecuniarily to his family. The court has adverted to various illustrations during the progress of the cause, for the purpose of serving to some extent as guides to you in arriving at a correct conclusion upon the subject; for instance, as to what would be the pecuniary value of the services of a boy like this, taking his intelligence, his health, his chances of life, the amount which he could earn up to the time that he would arrive at the age of twenty-one years. The court refers to this, not as the only element in the case, but as a very important one, which may guide you. Of course this is, after all, a speculative view in relation to it. It is somewhat conjectural and must be in the mind of every man what may be the value of services of a boy like this. The difficulty in this case is that it is almost impossible for you to separate, as it is your bounden duty to do, the suffering and anguish which the friends have sustained; and the suffering which the victim has passed through, from the mere pecuniary consideration of the matter. You cannot allow anything for pain or mental anguish which these parties, or any of them, have sustained. You have nothing to do with that. It becomes simply a question of dollars and cents.

The family, it seems, is a poor family, living by the daily labors of the father. It is probable, in the natural course of things, that this boy, if he had lived, would have been employed by his father toward the support of the family, and it is proper for you to take all this into consideration. Taking into consideration all these various changes and chances of human life, health, sickness, and all these things, it is for you to say how much you think, as reasonable and intelligent men, on your consciences and on your oaths, has been the loss to these parties—the pecuniary loss—by the death of this boy.

As to the other action which was tried, [unreported,] I am of opinion that that does not prevent the plaintiff from recovering in this action. In that case the defendant strenuously resisted the right of plaintiff to recover anything beyond the loss of service for the child during his life and whatever expenses were incurred by the plaintiff, and for the loss of time, and so on; and the court sustained the view of the defendant, and confined the jury in damages to those elements. This action is not brought for the identical cause of action upon which the jury were permitted by the court to pass in that case. This action is brought to recover, as I have already said, the pecuniary loss which these parties have sustained by the death of the boy, and of course the court thinks that the result in that case does not prevent the plaintiff from recovering in this, and I hardly think that it can have any effect by way of diminishing the damages which might be recovered, because the damages in that case were confined to specific things, and the court must presume that the jury found damages in conformity with the instructions of the court. Those were, as appeared by the instructions of the court, for the loss of service of the child from the time of the injury until he died, for medical attendance, funeral expenses and the loss of time of plaintiff and wife, by reason of his accident, from the time of its occurrence until the commencement of the suit. It would not be proper for you to allow anything whatever for any of these things; you are not to take them into consideration at all. They have been allowed by a former jury. You cannot allow them a second time.

Verdict for plaintiff.

NOTE, [from original report.] See, further, as to the great caution required of railroad companies in passing along streets, Bellefontaine & I. R. Co. v. Snyder, 18 Ohio St. 399; Chicago & A. R. Co. v. Gregory, 58 Ill. 226. The law places no restriction upon the rate of speed at crossings; the company has the preference. Warner v. New York Cent. R. Co., 44 N. Y. 465. This was a country crossing. "In crossing ordinary roads, caution and care are chiefly demanded to avoid running against or over anybody else; in crossing railroads, it is exacted to avoid being run over yourself. In the former case the blame attaches prima facie to the party doing the injury; in the latter it attaches, in the first instance, to the party obstructing the track." Telfer v. Northern R. Co., 30 N. J. Law, 188. And as to the company's duty in keeping a lookout, see Bellefontaine & I. R. Co. v. Snyder, supra; Bannon v. Baltimore & O. R. Co., 24 Md. 108. That the same circumstances will create different degrees of negligence and duty, see Boland v. Missouri R. Co., 36 Mo. 484; Chicago, B. & Q. R. Co. v. Dewey, 26 Ill. 255; O'Mara v. Hudson River R. Co., 38 N. Y. 445. Contra, Bannon v. Baltimore & O. R. Co., 24 Md. 108. For authorities as to computing damages, same as in the text, see Telfer v. Northern R. Co., supra; City of Chicago v. Major, 18 Ill. 349. For an exhaustive collection of authorities on the rule of damages in actions of this kind, see Sedg. Dam. 552, note 2. See, also, Brady v. City of Chicago, [Case No. 1,796.]