**Carrie L. Keel, as Administratrix of the Estate of Chester B. Keel, Deceased, Plaintiff-Appellant, v. Edna T. Compton, Administratrix of the Estate of Howard T. Compton, Deceased, Defendant-Appellee.**

**Gen. No. 69–24.**

Third District.

February 27, 1970.

Rehearing denied April 3, 1970.

Kellstedt & Young, of Peoria, for appellant.

Davis, Morgan & Witherell, of Peoria, for appellee.

STOUDER, J.

This is a wrongful death action commenced by Carrie Keel, Administratrix of the estate of Chester Keel, deceased, against Edna Compton, Administratrix of the estate of Howard Compton, deceased. The jury returned verdicts on the two counts submitted to it, the first in the amount of $5,000 for pecuniary loss to next of kin

and the second, $1,200 for funeral expenses. The Circuit Court of Peoria County entered judgment on the verdicts in favor of plaintiff-appellant and against defendant-appellee. The post-trial motion of plaintiff was denied and the plaintiff has appealed from the $5,000 judgment only, contending that the same is inadequate and erroneous.

Chester Keel, aged 63, and Howard Compton, aged 55, were both residents of Brimfield, Illinois, and were employees of the Caterpillar Tractor plant at East Peoria, Illinois. For several years Compton had driven his car to and from work. Keel, together with other Caterpillar employees who resided along the route, regularly rode with Compton. After working the day shift on November 30, 1965, Compton with five other employees, including Keel as passengers, started for his home in Brimfield. At various points along the route the four passengers other than Keel were let out, the last of such passengers being let out at his home on U.S. Route 150 approximately one and one-half miles east of the scene of the collision, which took place at the intersection of Route 150 and the Hasselbacher Road. U.S. 150 is a two-lane paved highway and intersects with the Hasselbacher Road, a gravel road, at right angles. Proceeding easterly from such intersection there is a curve and a dip in U.S. 150 and consequently cars approaching the intersection from the east as was the Compton car, have a limited view of the intersection. The day was clear and dry but at the time of the collision (4:45 p. m. or near sunset), headlights were necessary.

As the Compton car was about to pull onto the highway from the driveway of the home of the last passenger let out, it was passed by a car driven by Mary Watkins going west on U.S. 150. The Compton car then pulled onto the highway behind the Watkins vehicle and both proceeded in the direction of the intersection with Hasselbacher Road. According to Watkins, she was travel-

251

ling at about 60 miles per hour continuing such speed until she was at a point about one quarter mile east of the intersection at which time she slowed down, turned on her left turn signal and either stopped or practically stopped at the intersection waiting for an oncoming car to pass before making a left turn onto Hasselbacher Road. As she came to the intersection there was a truck stopped on the north shoulder of U.S. 150 at the northeast corner of the intersection. This truck had pulled off onto the shoulder to wait for traffic to clear in order to make a left-hand turn onto Hasselbacher Road. Another truck was stopped on Hasselbacher Road at the southeast intersection waiting to turn right or east onto U.S. 150. Snedeker, the driver of this truck, testified that he saw the Compton car about 500 feet beyond the Watkins car. The front end suddenly dipped as if the brakes were applied, the car swerved to the left, clipped the Watkins car and then glanced into the eastbound lane, where it was struck broadside by the oncoming car. Both Compton and Keel died as a result of the collision.

The original complaint brought by Keel's Administratrix charged Compton with both negligence and wilful and wanton misconduct. Only the negligence counts were submitted to the jury, the wilful counts being voluntarily withdrawn. It is plaintiff's theory that Keel was a paying passenger and, therefore, Compton owed a duty of ordinary care to him. In support of this theory, the plaintiff introduced the testimony of the other four passengers who each testified that he shared expenses by paying Compton $2.50 per week for riding with him. None of the passengers knew what the arrangement between Keel and Compton was, but there was testimony that Keel had been seen paying Compton.

In addition to returning its verdict for $5,000 in favor of plaintiff which is the basis of this appeal, the jury also found affirmatively in response to special interroga-

tories that Compton was the driver of the car and that Keel was a paying passenger.

Plaintiff argues that the trial court erred in failing to grant her post-trial motion for a new trial on the sole issue of damages because the verdict was based either on passion or prejudice or upon the jury's failure to consider all of the proper elements of damage sustained by plaintiff. Alternatively, she argues that she should have been granted a new trial generally both because of the foregoing alleged errors as well as errors in the admission of evidence and in rulings on instructions.

Since the adequacy of the damages is one of the principal issues of this case, the evidence relating thereto requires a brief summary.

The plaintiff and decedent had been married about forty years. Fourteen children were born of the marriage, ten living at the time of death. Two were living at home, a girl, age eighteen, in high school (whether this daughter was in high school is disputed in the briefs), and a son, thirty-three years old and self-employed.

The plaintiff wife was fifty-six years old with a life expectancy of 18.97 years. The deceased husband was sixty-three years old with a life expectancy of 14.14 years. The decedent had been for many years an employee in the foundry of the Caterpillar Tractor Company. The plaintiff wife had not been employed but occasionally performed gratuitous babysitting services for neighbors. The plaintiff Carrie Keel, and her decedent husband, Chester Keel, were buying a seven- or eight-room house on contract for deed and had owned it for about six years.

Mr. Keel made $6,081.09 as an employee at Caterpillar Tractor Company for the year 1963; $6,150.07 for the year 1964 and $5,981.01 in the year 1965 up until the time of his death on November 30, 1965. He gave his wife the entire check, and she handed him money on

occasion for his personal expenses, usually a small amount each week. She handled all the expenses of the household.

Retirement age at Caterpillar is at the end of age sixty-five. If the plaintiff's decedent had survived the three years until retirement age, based upon his last year's earning, he would have made approximately $18,000. Keel was in good health, as were his widow and children, and from the testimony relating to his habits and family relations it may be concluded that he was a good family man.

IPI Instruction 31.01 (Measure of Damages—Wrongful Death) was given in this case. It included the eight elements relating to damages as indicated in IPI 31.02 and also included the presumption of some substantial damages applicable where a widow and lineal descendants survive. Plaintiff argues that there is undisputed evidence relating to each of the eight elements specified in IPI 31.02 from which pecuniary injury may be inferred.

██ Many of the criteria relating to pecuniary injury are not susceptible of expression in monetary terms. The weight to be given such factors and their relevance to the pecuniary injury sustained is peculiarly a jury question. Courts are reluctant to disturb jury verdicts in such cases and will not do so unless such verdicts are the result of passion or prejudice or are palpably erroneous. Naslund v. Watts, 80 Ill App2d 464, 224 NE2d 474. In the case at bar plaintiff argues not only that the cumulative effect of all the evidence warranted a larger verdict but also in particular that the jury in awarding plaintiff $5,000 can only be deemed to have ignored the damage instruction insofar as it related to loss of support. We agree with this contention of plaintiff. It is undisputed that Keel was in good health, he earned more than $6,000 in each of the two preceding years, would in all probability earn at least $18,000

254

before being required to retire at Caterpillar, and that some additional amounts would be earned by Keel after his retirement. Based on these facts alone we fail to see how the award of $5,000 bears any relationship to the pecuniary injury when, in fact, it bears no relation to one of the proved elements which the jury was required to consider. See Rasmussen v. Clark, 346 Ill App 181, 104 NE2d 325, and McClure v. Lence, 345 Ill App 158, 102 NE2d 546.

Defendant seeks to justify the adequacy of the award by relying on such cases as Jury v. Ogden, 56 Ill App 100, Chicago, P. & St. L. R. Co. v. Woolridge, 174 Ill 330, 51 NE 701, Denton v. Midwest Dairy Products Corp., 284 Ill App 279, 1 NE2d 807, and Wilcox v. Bierd, 330 Ill 571, 162 NE 170. As stated in Jury v. Ogden and approved in the other cases, "The amount to be recovered is what the statute regards as the pecuniary value of the addition to such estate left as the deceased, in reasonable probability, would have made to it, and left, if his death had not been so wrongfully caused. It is to be estimated by the jury from all the facts and circumstances proved, his prospect of life, and his means, opportunities, ability and habits, with reference to the making and saving of money or money's worth." Or in other words, how much would the decedent in all probability have saved.

■ ■ According to defendant's argument based on the foregoing proposition, the decedent Keel, at the time of his death, had accumulated little of the world's wealth in material terms. Consequently, he should not have been expected to save much in the future and accordingly, the amount awarded by the jury was adequate. It would be sufficient to say that the "enhancement of estate test" is not the measure of damages presently embodied either in our general law or the instruction relating thereto. See Flynn v. Vancil, 41 Ill2d 236, 242 NE2d 237, Dodson v. Richter, 34 Ill App2d 22, 180 NE2d

505, Naslund v. Watts, supra, Rasmussen v. Clark, supra, and McClure v. Lence, supra. The insistence by defendant that the award should be measured in such terms in fact recognizes its inadequacy when otherwise considered in relation to the appropriate standard. Thus if a decedent spent all of his earnings on his wife or other dependent he could not be expected to accumulate any estate and consequently the next of kin could sustain no pecuniary loss on account of his premature death. To state the argument in such terms reveals its absurdity as applied to the facts of this case.

The question remains as to whether plaintiff ought to have a new trial on the issue of damages only or whether a new trial generally is required. The rule with respect to when new trials on the issue of damages only are appropriate is set forth in Paul Harris Furniture Co. v. Morse, 10 Ill2d 28, 139 NE2d 275, which states that such new trials are appropriately granted where the issues of liability and damages are so separable that a determination on the issue of damages alone will not result in any injustice. The issues will not be deemed separable if it appears the verdict was the result of a compromise.

As shown by the record, the husband of each of the parties died in the collision. In her capacity as surviving spouse, the defendant's fault was not at issue. The basic facts of the case do present a framework which may have evoked the sympathy of the jury. However, notwithstanding plaintiff's contentions to the contrary, we find nothing in the record indicating that defense counsel improperly or deliberately attempted to persuade the jury that its verdict should be affected by such sympathy.

It may be argued that sympathy may have caused the jury to return an inadequate verdict. Yet there is nothing from the amount of the verdict, considered in relation to the facts and circumstances of the case, indicating

that the verdict may not have been a compromise of liability against damages. Accordingly, we believe that a new trial ought to be held on all issues.

Since this case must be retried, we believe it is appropriate and necessary to consider other alleged errors in order that questions relating thereto may be avoided in the retrial.

Plaintiff argues that the trial court erred on a ruling on evidence relating to damages. Plaintiff presented the testimony of an official of the Caterpillar plant for the purpose of showing that Keel would have been entitled to a pension of $113 per month commencing upon his retirement. According to plaintiff, this pension was partly paid for by Keel and consequently was evidence of additional income to Keel, the benefits of which would not be available because of his premature death. It also appeared from a documentary exhibit which plaintiff proposed to introduce that 55% of the pension otherwise payable to Keel would be payable to his widow. Plaintiff objected to defendant's efforts to elicit from this witness the fact that a percentage of the pension was, in fact, payable to plaintiff. The issue was originally discussed outside the presence of the jury and the trial court held that the facts concerning the payment of the pension to the plaintiff widow were properly presented to and considered by the jury, and it is this ruling which plaintiff contends was erroneous.

The principal cases relied upon by plaintiff are Devine v. City of Chicago, 172 Ill App 246 (fireman's pension paid widow) and Illinois Cent. R. Co. v. Prickett, 210 Ill 140, 71 NE 435 (insurance proceeds paid widow). In each of the foregoing cases the court held that the payment was properly excluded from consideration by the jury in mitigation of damages under the collateral source rule.

In our opinion, the trial court ruled properly on this issue and we do not believe the cases cited by

257

plaintiff are applicable. To the extent that the loss of an expected pension is relevant to the issue of the loss of support sustained by the surviving widow, the actual loss from the same income is equally relevant. In applying the collateral source rule, evidence of the pension payable to the plaintiff as surviving widow would be inadmissible absent a claim based on decedent's loss of the same pension.

Plaintiff also argues that the trial court erred in the giving of instructions at the request of the defendant. The first instruction given and objected to is commonly referred to as the "sudden emergency" instruction. Although defendant's brief is silent on the point, the drafters of Illinois Pattern Jury Instructions recommended that no such instruction be given. See comments to IPI, § 12.02. Indeed in Culp v. Olive, 45 Ill App2d 396, 195 NE2d 729, the principal case relied upon by defendant, the court discusses the recommendation against usage, indicates that it does not disagree with such recommendation and then holds that the giving of such instruction was harmless error. The defendant in this court has failed to show any reason why the recommendations of the drafters of the Pattern Jury Instructions should be disregarded and accordingly, we believe the trial court erred in giving the instruction.

Plaintiff also objected to another instruction given at the request of defendant which, in substance, indicated that the only duty owed by a driver to a guest was to refrain from wilful and wanton conduct. Defendant claims that such instruction was proper because he was entitled to have the jury instructed on his theory of the case. Since there was no issue of wilful and wanton conduct in the case submitted to the jury (counts relating thereto having been voluntarily withdrawn), we are unable to understand how such instruction related to any issue of the case. It was defendant's theory that plaintiff was a guest and not a paying passenger.

Whatever duty might have been due a guest has no bearing on the determination of whether the person was a guest. Being unrelated to any issue in the case, the giving of the instruction can only be deemed to have tended to obscure the real issues or confuse the jury. The issue of wilful and wanton conduct not being present in the case instructions relating thereto were erroneous.

We believe the Circuit Court of Peoria County erred in denying plaintiff's motion for a new trial and accordingly, the judgment of said Court is reversed and remanded with directions that plaintiff be granted a new trial.

Reversed and remanded with directions.

RYAN, P. J. and ALLOY, J., concur.