(No. 49976.)

RALPH GREEN, Appellant, v. CHARLES SMITH *et al.*,
Appellees.

*Opinion filed May 26, 1978.*

KLUCZYNSKI, J., took no part.
RYAN, J., specially concurring.

Harris and Lambert, of Marion, for appellant.

Charles R. Jelliffe, of Jelliffe & Ferrell, of Harrisburg, for appellees.

MR. JUSTICE GOLDENHERSH delivered the opinion of the court:

Plaintiff, Ralph Green, as "Administrator of the Estates of Jillena Ann Green and Unborn Infant, Deceased," appealed from the judgment of the circuit court of Saline County entered upon allowance of the motion of defendants, Charles Smith, d/b/a Charles Smith Trucking Company, and Gary Ross, to dismiss count II of plaintiff's complaint. Plaintiff, in count I of the complaint, sought to recover damages for the wrongful death of his wife, Jillena Ann Green, and in count II sought to recover damages for the pecuniary loss suffered "by reason of the death of the unborn infant." The appellate court affirmed (51 Ill. App. 3d 856), and we allowed plaintiff's petition for leave to appeal. This action arose out of a collision between an automobile driven by Jillena Ann Green and a truck owned and driven by defendants. The pleadings are adequately described in the opinion of the appellate court and will be reviewed here only to the extent necessary to discuss the issues. In count II it was alleged that immediately prior to the collision Jillena Ann Green was 14 weeks pregnant with the unborn infant, that at the time the unborn infant was a "living, viable human being" and that as a proximate result of the collision "the unborn infant died the same date."

The basis upon which the circuit court allowed defendants' motion to dismiss, and upon which the appellate court affirmed, was that at 14 weeks the fetus

was not viable and that there was no cause of action under the Wrongful Death Act for its "death."

Plaintiff contends that under the decision of this court in *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, "viability is no longer a required criterion in a wrongful death action for the death of an unborn child being carried by her mother." Alternatively, plaintiff contends that should this court hold "that viability is still a criterion in a wrongful death action," the complaint nevertheless states a cause of action for the reason that whether the fetus was viable is a question of fact. Defendants contend that a 14-week fetus is not viable and is therefore not a person for whose death damages may be recovered under the provisions of the Wrongful Death Act.

The Wrongful Death Act in pertinent part provided:

> "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages ***." Ill. Rev. Stat. 1975, ch. 70, par. 1.

In *Amann v. Faidy* (1953), 415 Ill. 422, it was held that under the Wrongful Death Act a complaint which alleged that as the result of defendant's negligence a child *en ventre sa mere* suffered injuries which caused his death shortly after birth stated a cause of action. In *Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368, the court held that under the Wrongful Death Act there was a cause of action for the death of a child stillborn after its mother was injured. In both cases it was held requisite to the cause of action that, at the time the injuries were sustained, the child was viable. Although in *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 353, the court rejected viability "as a criterion to a common law action for

prenatal injuries," the court did not in that case decide the question presented here. In our opinion there is a clear distinction between a common law cause of action on behalf of a live-born infant for injuries suffered prior to its having become viable, and a statutory cause of action for the destruction of a fetus not yet viable. The extent of the loss incurred by a living child burdened with mental or physical defects resulting from a prenatal occurrence is not affected by whether the injuries were suffered prior to or after he became viable. On the other hand, the Wrongful Death Act provides for recovery for the "death of a person," and we find no basis upon which to hold that one can cause the death of a fetus not yet viable. We hold, therefore, that no cause of action exists for injuries and death of the unborn infant plaintiff unless at the time of the occurrence it had attained viability. Although there are several decisions which arguably support the position that viability is irrelevant, our holding is consistent with the majority view. See Annot., 84 A.L.R.3d 411 (1978).

We consider next the question whether the appellate court correctly held that "There is no reason to believe that plaintiff could prove that the fetus was viable at the time of injury" (51 Ill. App. 3d 856, 859) and that as a matter of law the fetus could not be viable.

The record shows that shortly after the appellate court opinion was filed, plaintiff pursuant to Rule 362 (58 Ill. 2d R. 362) moved for leave to amend his complaint to allege that at the time of the occurrence Jillena Ann Green, deceased, was 18, rather than 14, weeks pregnant. Plaintiff filed no petition for rehearing, and the motion to amend the complaint was denied. Section 46 of the Civil Practice Act in pertinent part provides:

> "(1) At any time before final judgment amendments may be allowed on just and reasonable terms *** in any matter, either of form or substance, in any *** pleading, *** which may enable the plaintiff to sustain the claim

for which it was intended to be brought \*\*\*." (Ill. Rev. Stat. 1977, ch. 110, par. 46.)

The decision of the question presented requires that the complaint be treated as amended in accordance with plaintiff's motion.

As Mr. Justice Ryan observed in his dissent in *Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368, 376: "Viability \*\*\*. is uncertain, indefinite and depends upon several factors other than the length of pregnancy. \*\*\* '[I] t is a relative matter, depending on the health of mother and child and many other matters in addition to the stage of development.' " In *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, Mr. Justice Moran, writing for the plurality, stated: "In addition to the length of pregnancy, viability depends on other factors which include the weight and race of the child and the available life-sustaining techniques." (67 Ill. 2d 348, 352.) Relying principally on "Obstetrics" by Professor Nicholson J. Eastman, Professor of Obstetrics at Johns-Hopkins University, defendants argue that the smallest, youngest fetus ever to have survived was 20 weeks and weighed approximately 400 grams; that the fetus in this case at 14 weeks would probably weigh less than 120 grams and as a matter of law, was not viable. We note that the edition (10th) of "Obstetrics" upon which defendants rely was published in 1950, and we have not been favored with information concerning the opinions expressed in the four editions published since that time.

From our review of the authorities we are unable to say that as a matter of law the unborn infant was not viable at the time of the occurrence which allegedly caused its "death." It does not appear that in the present state of medical science it can be held that beyond question the fetus here involved could not have survived separate from and independent of its mother. Under the circumstances we hold that the question whether the unborn infant was

viable at the time of the occurrence was one of fact and the appellate and circuit courts erred in deciding the question as one of law.

For the reasons stated the judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court of Saline County for further proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or decision of this case.

MR. JUSTICE RYAN, specially concurring:

I agree with the majority decision insofar as it is mandated by this court's previous holding in *Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368. However, I must again object, as I did in my dissent in that case, to the use of the viability standard. I believe that it is incorrect to premise the existence of a cause of action for wrongful death on such an uncertain and indefinite status. I believe that the continued use of this test is inconsistent with this court's decision in *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, and with prenatal injury cases previously decided by our appellate courts (*Sana v. Brown* (1962), 35 Ill. App. 2d 425; *Daley v. Meier* (1961), 33 Ill. App. 2d 218). Also, I find the use of the viability standard inconsistent with expressed legislative intent to protect the unborn from the point of conception.

As the law currently stands in Illinois, recovery for wrongful death of an unborn child requires a finding of viability at the time of injury. (*Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368.) *Chrisafogeorgis* was, to a large degree, based upon the premise that an unborn child becomes a "person" only when it becomes viable:

"[W]e consider more realistically and reasonably that viability is the appropriate line of demarca-

tion. It is the time at which a child is capable of being delivered and remaining alive separate from and independent of the mother. This can be said to be the critical stage of a 'person' within the meaning of the Wrongful Death Act's language 'Whenever the death of a person ***.' " 55 Ill. 2d 368, 374-75.

My major objection to the viability standard, as I indicated in my dissent in *Chrisafogeorgis,* is that the point at which a fetus becomes viable is highly uncertain, depending upon such factors as the health of the mother and child. As Mr. Justice Moran noted, writing for the plurality in *Renslow,* viability is also dependent upon the weight and race of the child and the techniques which are presently available to sustain the life of the fetus outside the womb. Indeed, the legislature, in defining viability, makes specific reference to such techniques. It defines viability as "that stage of fetal development when the life of the unborn child may be maintained outside the womb by natural *or artificial life-supportive systems."* (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 38, par. 81—22(2).) It is eminently clear that advances in medical technology will continue to move the point of viability closer and closer to conception. For this court to base its determination that an unborn child becomes a "person" only at the point of viability is to premise the right to maintain an action for wrongful death on an uncertain and continually changing standard.

Secondly, the requirement of viability for maintenance of a wrongful death action contrasts sharply with Illinois cases allowing recovery for injuries to nonviable fetuses which are later born alive. As I noted in my dissent in *Chrisafogeorgis,* the First District Appellate Court has held that recovery for prenatal injuries does not require a showing of viability at the time of injury if the child is later born alive (*Sana v. Brown* (1962), 35 Ill. App. 2d

425; *Daley v. Meier* (1961), 33 Ill. App. 2d 218). These cases are apparently supported by this court's decision in *Renslow,* even though that case dealt with negligent acts occurring before conception.

The majority in the present case attempts to distinguish recovery for personal injury from recovery for wrongful death by pointing out that in the former the child suffers the burden of mental or physical defects:

> "In our opinion there is a clear distinction between a common law cause of action on behalf of a live-born infant for injuries suffered prior to its having become viable, and a statutory cause of action for the destruction of a fetus not yet viable. The extent of the loss incurred by a living child burdened with mental or physical defects resulting from a prenatal occurrence is not affected by whether the injuries were suffered prior to or after he became viable." 71 Ill. 2d at 504.

This distinction is faulted by the same logic which compelled the majority of this court in *Chrisafogeorgis* to extend a cause of action for wrongful death for the first time to an unborn fetus. The court stated:

> "Another ground often expressed for permitting a right of action is that a holding would be logically indefensible which would allow a right of action where an injured child survives delivery for even the briefest time and would deny an action where the viable child does not survive delivery." 55 Ill. 2d 368, 373.

The illogic of such a distinction is also illustrated by the case of *Amann v. Faidy* (1953), 415 Ill. 422. In that case, this court allowed recovery for the wrongful death of an infant who was injured while viable, born alive and died shortly after from the injuries. Under the majority decision, however, recovery for wrongful death for a

similar infant injured just *prior* to viability who is born alive and dies shortly thereafter may not be had. In both cases, the negligent acts, the causation, and the injuries may have been exactly the same, yet recovery is banned in the later situation by the arbitrary viability requirement. In addition, as I pointed out earlier, viability is so uncertain that it will be difficult in many cases to determine if recovery shall or shall not be allowed.

Lastly, I wish to point out that the judicial determination that a nonviable fetus is not a person is directly contrary to legislative intent as clearly expressed in "An Act in relation to abortions ***" (Ill. Rev. Stat. 1977, ch. 38, par. 81—21 *et seq.*). This act, enacted subsequent to *Chrisafogeorgis,* was designed to conform Illinois law with the United States Supreme Court case of *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705, permitting abortions under certain circumstances. While noting that the legislation was mandated by *Roe,* the General Assembly specifically stated that it considers a fetus to be a person from the point of conception:

> "[T]he General Assembly of the State of Illinois do solemnly declare and find in reaffirmation of the long-standing policy of this State, that the unborn child is a human being from the time of conception and is, therefore, a legal person for purposes of the unborn child's right to life and is entitled to the right to life from conception under the laws and Constitution of this State." (Ill. Rev. Stat. 1977, ch. 38, par. 81—21.)

Such clearly expressed legislative concern for the unborn must be considered by this court in construing the Wrongful Death Act, especially since this enactment was post-*Chrisafogeorgis.*

In light of the uncertainty, inconsistencies and conflict with legislative intent which result from use of the viability standard, I suggest that this court abandon the requirement of proving viability in wrongful death cases. I

believe that this court must adopt a fairly definite standard for determining if the cause of action for wrongful death exists. While it is not this court's function to assume the role of the legislature by decreeing when a fetus becomes a person, logic and conformity with prenatal injury cases and the clearly expressed legislative intent seem to require that we extend a cause of action for the wrongful death of an unborn child to the point of conception.