RONALD ELLIOTT *et al.*, Ex'rs of the Estate of Paul Elliott, Deceased, Plaintiffs-Appellants and Cross-Appellees, *v.* HILDA WILLIS *et al.*, Defendants-Appellees and Cross-Appellants.

Fourth District   No. 15588

Opinion filed October 24, 1980.—Rehearing denied December 8, 1980.

Ronald N. Hanley, of Hanley, Traub & Hanley, of Fairbury, for appellants.

Costigan & Wollrab, of Bloomington, for appellees.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Paul Elliott died April 13, 1976, when the car he was driving collided with a pickup truck driven by Hilda Willis. His estate brought a wrongful death action against Hilda and her daughter, Carol, as principal, because Hilda was driving Carol's mail route that day. Verla Elliott, widow of Paul Elliott and a passenger in his car, sued Hilda and Carol Willis for her own personal injuries. The trial court entered judgment on the jury's verdict; the jury awarded Verla Elliott $50,182.50 for her own personal injuries, which she does not appeal. The jury awarded the estate only $4,500, from which amount the estate appeals.

The estate argues that the jury's verdict is too low as a matter of law and finds further error in the trial court's refusal to instruct the jury concerning Verla Elliott's loss of consortium and the estate's loss of accumulation caused by the payment of estate taxes. We agree that the verdict was too low and that the jury should have been instructed concerning consortium. The trial court's refusal to instruct the jury on estate taxes was correct.

■■ Evidence concerning the companionable nature of the Elliotts' relationship was introduced at trial; the trial court properly admitted this evidence but incorrectly refused to instruct the jury on the effect and use of the evidence. The consortium question is not resolved by pretending that the admission of the evidence, without a jury instruction on it, was sufficient. To so hold would create anomalies concerning evidence and instructions: admissible evidence not entitled to instruction would be in limbo, occupying a nether zone between materiality and immateriality. The estate should have been permitted the instruction on lost consortium, i.e., lost services, society, companionship, and sex. The purpose of the wrongful death statute is to compensate a family, as plaintiffs, for the

injury done to them by the actions causing the death of their family member. Section 2 of "An Act requiring compensation for causing death by wrongful act, neglect, or default" (Ill. Rev. Stat. 1979, ch. 70, par. 2) (Wrongful Death Act) provides:

> "[T]he jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person."

■■ The ban in Illinois Pattern Jury Instruction, Civil, No. 31.07 (2d ed. 1971) (IPI), excluding society as an element of loss in a wrongful death action, is not justified by the decisional law in Illinois. Treating the major Illinois cases on this and related matters as a whole, the thrust of the case law points to a liberal, expansive interpretation of the pecuniary loss standard. Several cases imply compensation for lost consortium or society, yet do not expressly permit it. In *Hall v. Gillins* (1958), 13 Ill. 2d 26, 147 N.E.2d 352, instead of suing under the Wrongful Death Act, a widow and son brought a common law tort action for "destruction of the family unit." Writing for a unanimous court, Justice Schaefer minimized the differences between the recovery sought by the plaintiffs and the damages recoverable under the Wrongful Death Act. The court said:

> "The term 'pecuniary injuries' has received an interpretation that is broad enough to include most of the items of damage that are claimed by the plaintiffs in this case.
>
> Each plaintiff alleges deprivation of support as well as deprivation of the companionship, guidance, advice, love and affection of the deceased. Loss of support is of course an element of damages under the statute." (13 Ill. 2d 26, 31, 147 N.E.2d 352, 355.)

Justice Schaefer then referred to the presumption accorded surviving kin of a substantial economic loss and to the cases permitting children to recover for lost instruction and guidance upon the death of their parent. Yet *Hall* did not specify what elements of damage sought in the new tort were excluded from recovery in wrongful death. The surviving spouse and lineal descendants are presumed, however, to have suffered a substantial pecuniary loss, and the clear implication, repeated in other cases, is that in a wrongful death action the verdict will be sufficiently high that the plaintiff will not seek on review recovery for losses difficult to measure, such as society.

■■ *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881, held that a wife could maintain an action for lost consortium resulting from the nonfatal injuries to her husband. Thus, with recovery for consortium permitted when a spouse is merely injured, logic dictates that recovery be allowed when death occurs. The only basis in Illinois for excluding consortium as

an element of loss when death occurs is that the suit must be brought under the Wrongful Death Act; the action approved in *Dini* was nonstatutory. Yet in the case of death, the harm inflicted upon the marital relationship is more final and generally greater. Furthermore, the existence of the statute should not be viewed as an obstacle to compensation; the cases have emphasized its remedial nature and invite us to interpret it as permitting compensation for consortium.

In *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, a wife brought a common law count for consortium lost upon the death of her husband; the court refused to permit the count on the grounds that the Wrongful Death Act provided a nearly equivalent remedy. *Knierim* acknowledged the conclusion in *Dini* that the husband/wife relationship warranted legal protection but found that the Wrongful Death Act sufficiently protected the marital interest by presuming a substantial "pecuniary" loss without requiring proof of actual loss. *Knierim* held that "the differences between an action for loss of consortium resulting from the death of a husband and an action for pecuniary loss under the Wrongful Death Act are not sufficiently significant to warrant us recognizing the action for loss of consortium as an additional remedy available to the widow." (22 Ill. 2d 73, 82-83, 174 N.E.2d 157, 162-63.) Significantly, the court focused on the duplicative nature of the wife's common law count for lost consortium rather than on the old common rule prohibiting actions based on the death of another person. *Knierim* treated the wrongful death action and the common law count as overlapping alternatives; the common law count was then unnecessary precisely because the statutory remedy permitted recovery for this sort of injury. Yet the court did not expressly hold that consortium was a compensable element in a wrongful death action.

Thus, Illinois case law permits either spouse to sue for loss of consortium following nonfatal injuries to the other spouse and implies that for death, the Wrongful Death Act provides compensation sufficient to obviate a common law action for lost society or consortium. To reflect this, the jury instruction should have included consortium as an element of damages recoverable in a wrongful death action.

The method established in the Wrongful Death Act for dividing awards among the surviving family members does not prevent recovery for loss of consortium. The Wrongful Death Act provides:

> "The amount recovered in any such action shall be distributed by the court in which the cause is heard or, in the case of an agreed settlement, by the circuit court, to each of the surviving spouse and next of kin of such deceased person in the proportion, as determined by the court, that the percentage of dependency of each

such person upon the deceased person bears to the sum of the percentages of dependency of all such persons upon the deceased person." (Ill. Rev. Stat. 1979, ch. 70, par. 2.)

Because the statute requires that the award be divided among all the survivors on the basis of dependency, consortium, the surviving spouse's loss alone, could be viewed as beyond the nature of compensable damages. This argument, however, proves too much; if applied, it would jeopardize compensation in several types of cases where the right to recovery is unquestioned. First, the argument in effect limits compensation to those elements of loss suffered by all the survivors; any elements not common to all the survivors would be open to this objection. Thus, juries could no longer be instructed to consider children's loss of guidance and moral training when only one parent is killed: the loss of training is peculiar to the children and not shared by the surviving spouse. Yet IPI Civil No. 31.04 (2d ed. 1971) permits this recovery. The objection would also prevent parents from recovering upon the death of a minor child unless they presented evidence of their dependency. "Dependency" within the meaning of section 2 of the statute has been interpreted to refer to a financial relationship existing at the time of death. (*In re Estate of Griffy* (1978), 64 Ill. App. 3d 504, 381 N.E.2d 755; *Rust v. Holland* (1957), 15 Ill. App. 2d 369, 146 N.E.2d 82.) But instead of limiting recoverable damages to the extent of the minor's financial contribution to the family unit, cases involving the deaths of minors predicate damages on more intangible and nonfinancial considerations, such as the child's health (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237), mental ability (*Long v. Bennett* (1977), 55 Ill. App. 3d 50, 370 N.E.2d 627; *Prather v. Lockwood* (1974), 19 Ill. App. 3d 146, 310 N.E.2d 815), and life expectancy (*Baird v. Chicago, Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463, 349 N.E.2d 413). Recovery under the statute is also permitted for the death of a viable fetus. *Green v. Smith* (1978), 71 Ill. 2d 501, 377 N.E.2d 37; *Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368, 304 N.E.2d 88.

The statute presumes that the survivors have suffered a "substantial loss," yet that is unrelated to actual dependency. For example, the presumption is not rebutted by proof that a deceased child had no dependents. *Yamada v. Hilton Hotel Corp.* (1977), 60 Ill. App. 3d 101, 376 N.E.2d 227.

■■ We realize that *Kaiserman v. Bright* (1978), 61 Ill. App. 3d 67, 377 N.E.2d 261, reached the opposite results and affirmed the dismissal of a court seeking compensation for loss of society in a wrongful death action. Although the First District's decision in *Kaiserman* was binding on the trial court here, that decision does not bind us (*Roby v. Illinois Founders Insurance Co.* (1978), 57 Ill. App. 3d 89, 372 N.E.2d 1097; *Garcia v. Hynes & Howes Real Estate, Inc.* (1975), 29 Ill. App. 3d 479, 331 N.E.2d 634; see

Mattis & Yalowitz, *State Decisis Among* [Sic] *the Appellate Court of Illinois*, 28 DePaul L. Rev. 571 (1979)), and we decline to follow it. The *Kaiserman* decision regarding society was based on two appellate court opinions, an opinion by the Illinois Supreme Court (*Zostautas v. St. Anthony DePadua Hospital* (1961), 23 Ill. 2d 326, 178 N.E.2d 303), and an early decision by a Federal court (*Brady v. Chicago* (N.D. Ill. 1865), 3 F. Cas. 1196 (No. 1796)). *Brady*, relying on *Barley v. Chicago & A.R. Co.* (N.D. Ill. 1865), 2 F. Cas. 827 (No. 997), held that lost society was not compensable in a wrongful death action; *Barley*, however, had held only that anguish and grief were not compensable. *Kaiserman's* reliance on *Zostautas* is similarly misplaced: in *Zostautas* the court was faced with two parents' contract count seeking compensation for mental anguish; their son had died in the course of a tonsillectomy. *Zostautas*, applying to the contract count the scope of damages recoverable in a wrongful death action, held that mental anguish was not compensable. Lost society or consortium is sufficiently distinct from bereavement to distinguish this case from *Zostautas*.

■■ The plaintiffs also argue that the jury should have been instructed to include as damages the loss to the estate caused by the payment of death taxes; the plaintiffs seek to recover the investment income that will be lost from cashing in assets to discharge the tax liability. Although lost earnings and pensions are recoverable in a wrongful death action (*Keel v. Compton* (1970), 120 Ill. App. 2d 248, 256 N.E.2d 848), investment income generally is not. (Annot. 52 A.L.R. 3d 1289, 1293 (1973); 5 Speiser, Recovery for Wrongful Death §6.11 (2d ed. 1975).) The decedent here was retired and his income flowed entirely from rent, interest, and dividends. The plaintiffs' analogy to funeral and medical expenses is misplaced: recovery of those costs is based on the survivors' liability for them under the Family Expense Act (Ill. Rev. Stat. 1979, ch. 40, par. 1015) and is not grounded in the Wrongful Death Act. *Graul v. Adrian* (1965), 32 Ill. 2d 345, 205 N.E.2d 444; *Saunders v. Schultz* (1960), 20 Ill. 2d 301, 170 N.E.2d 163.

■■ Following the plaintiffs' post-trial motion and notice of appeal filed March 19, 1979, and hand delivered that date to the defendant, the defendants filed their own post-trial motion March 20, 1979. The motion questioned the sufficiency of the evidence supporting the jury's special finding that Paul Elliott had not been contributorily negligent. A hearing was conducted on this motion March 27, 1979, and the motion was denied. The defendants then filed their notice of appeal April 10, 1979. This court issued a rule to show cause why the defendants' notice of appeal should not be dismissed for being filed too late. Supreme Court Rule 303 (73 Ill. 2d R. 303) provides: "If a timely notice of appeal is filed and served by a party, any other party, within 10 days after services upon

him, or within 30 days after the entry of judgment, whichever is later, may join in the appeal, appeal separately, or cross-appeal by filing a notice of appeal, indicating which type of appeal is being taken." The plaintiffs' notice of appeal was timely filed; the defendants therefore should have filed their own notice of appeal, without first filing a motion, by March 29—10 days after the plaintiffs' notice of appeal was filed, which is later than 30 days after the entry of judgment, February 22, 1979. This rule clearly covers all types of appeals; the defendants' distinction between an appeal pertaining to the verdict in favor of Verla Elliott and one pertaining to the verdict for the estate is irrelevant. Verla did not appeal, but the defendants appealed both verdicts. Yet the rule governs all appeals—separate and cross—and thus the distinction has no effect.

■■ The defendants also argue that Supreme Court Rule 366(b)(2)(iii) (73 Ill. 2d R. 366(b)(2)(iii)) required them to file a motion and await a ruling on it before they could file their own notice of appeal. That rule provides: "A party may not urge as error on review of the ruling on his post-trial motion any point, ground, or relief not specified in the motion." The rule does not apply to a case such as this, where more than one party appeals, because Rule 303 implicitly relieves the part making a later appeal from filing a post-trial motion.

The decisional law supports this interpretation of the rules. In *City of Chicago v. Myers* (1967), 37 Ill. 2d 470, 227 N.E.2d 760, the supreme court determined that under the Civil Practice rules, filing a notice of appeal divests the trial court of jurisdiction over the case. Filing a post-trial motion after another party has already filed a notice of appeal is therefore meaningless. *In re Estate of Lucas* (1978), 71 Ill. 2d 277, 375 N.E.2d 112, is distinguishable; there the trial court was held to have jurisdiction to enter a supplemental order removing the executor of an estate, although the executor had previously filed a notice of appeal pertaining to an earlier order entered by the court appointing a special administrator. *Lucas* ruled that *Myers* did not apply because the appointment of a special administrator is sufficiently unrelated to the removal of an executor so that the trial court still "retained jurisdiction to hear and determine matters independent of and collateral to the subject matter of the order from which the appeal was taken." (71 Ill. 2d 277, 281, 375 N.E.2d 112, 114.) *Hoffmann v. Clark* (1977), 69 Ill. 2d 402, 372 N.E.2d 74, held that the trial court lacked jurisdiction to enter a clarifying order in a case after notice of appeal had already been filed. Although this result may lead to unfairness in particular instances (*Farwell Construction Co. v. Ticktin* (1980), 84 Ill. App. 3d 791, 405 N.E.2d 1051; *Bitzer Croft Motors, Inc. v. Pioneer Bank & Trust Co.* (1980), 82 Ill. App. 3d 1, 401 N.E.2d 1340), we think that the rules reasonably require that. Although this result prevents the trial court from reviewing the later party's claim of error, an appellate court will not be

foreclosed from review, given that in such a situation a post-trial motion is unnecessary.

Reversed and remanded for a new trial upon the issue of damages only. The defendants' appeal is dismissed.

GREEN, J., concurs.

Mr. JUSTICE TRAPP, concurring in part, and dissenting in part:

I dissent from this opinion insofar as it determines that the trial court erred in giving and denying instructions relating to loss of society or consortium as an element of damages and from the remandment for a new trial upon damages only. I concur in the opinion upon the other issues considered.

The majority opinion complains that the cited *Hall v. Gillins, Dini v. Naditch,* and *Knierim v. Izzo* have implied, or have invited, a holding that loss of society or consortium are compensible under the Wrongful Death Act, yet have never so expressly held. It would seem logical to conclude that if the supreme court believed such intangibles to be compensible it would have simply said so.

It is not quite precise to state "The purpose of the wrongful death statute is to compensate a family, as plaintiffs, for the injury done to them by the actions causing the death of their family member." The Act is stated in the language "just compensation with reference to the pecuniary injuries * * *." In *Howeltt v. Doglio* (1949), 402 Ill. 311, 83 N.E.2d 708, the court, in distinguishing the damages under the Dramshop Act from the damages provided in the Wrongful Death Act, said:

> "As pointedly observed in *Michigan Central Railroad Co. v. Vreeland,* 227 U.S. 59, 'A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, "not only to express the character of the loss of the beneficial plaintiff which is the foundation of recovery, but also to discriminate between a material loss which is susceptible of pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation." ' " 402 Ill. 311, 317, 83 N.E.2d 708, 712.

With somewhat less particularity, the same limitation of quality is reiterated in *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.

It appears that the language of the Act specifying "pecuniary injury" was the language of the original act adopted in 1853 and that such terminology has never been modified by the legislature. The limitations of the term "pecuniary injury" have involved the case law since the adoption of the Act, and the exclusion of all loss of decedent's society as an element

of damage to the surviving spouse in Illinois Pattern Jury Instructions, Civil, No. 31.07 (2d ed. 1971) is the product of such case law.

In *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, the court stated a rationale in companion context which is relevant here. Count VI of the *Knierim* complaint alleged mental anguish as an element of injury under the Dramshop Act. Sustaining the trial court's dismissal of that count, the opinion stated:

> "This court at an early date held that mental anguish, disgrace, and loss of society do not constitute an injury to person within the meaning of the act. (*Albrecht v. Walker*, 73 Ill. 69; *Freese v. Trip* 70 Ill. 496), and this appears to be the rule in other States with similar statutes. (Annot. 6 A.L.R. 2d 798.) If we were to hold that mental disturbance now constitutes an injury to person, we would be doing what the legislature has not seen fit to do in the numerous amendments to the act since 1874 when the *Freese* decision was rendered. This court cannot, under the guise of statutory construction, enlarge the classification of actionable injuries under the act. (*Howlett v. Doglio*, 402 Ill. 311.) The count in question was properly dismissed." (22 Ill. 2d 73, 80, 174 N.E.2d 157, 161.)

Such rationale cannot be disregarded upon the issue here presented.

It is an appropriate judicial assumption that the legislature is aware of the several decisions accepted by the majority as implying that the elements of damage be stated in an action for wrongful death should be enlarged to include loss of society or consortium. *Hall v. Gillins* was decided in 1958, *Knierim v. Izzo* was decided in 1961. Section 2 of the Act (Ill. Rev. Stat. 1979, ch. 70, par. 2) has been amended at virtually each subsequent session of the legislature, yet no amendment to enlarge the scope or modify the specification of "pecuniary injury" has been undertaken by that body.

It is said that since the opinion in *Dini v. Naiditch* permits recovery for loss of society or consortium when one spouse is injured, there should also be the additional element of damage implied when a spouse is killed. The proposition disregards the fact that where a spouse is injured no other action is provided for loss of services suffered by the spouse of the injured person. In instances of death, the surviving spouse has the statutory action for pecuniary injury which the courts, in *Hall v. Gillins* and *Knierim v. Izzo*, have said have little significant difference from the damages sought here.

The majority opinion undertakes to denigrate the meaning of "pecuniary injury" by references to *Flynn v. Vancil* and *Baird v. Chicago, Burlington & Quincy R.R. Co.* (1976), 63 Ill. 2d 463, 349 N.E.2d 413, in saying that as to the death of minors those cases permit evidence of health and mental ability of minors and in so doing "predicate damages on more

intangible and non-financial considerations" than contributions. As clearly stated in *Baird*, such factors are deemed evidence necessary to support a rebuttable presumption of pecuniary loss which cannot then be established with evidence of industry and thrift. Such evidence of good quality in the minors is treated as evidence relevant to pecuniary injury and not as an additional basis or element for damages. Similarly, where an adult leaves minor children, IPI Civil No. 31.04 (2d ed. 1971), treats evidence of a parent's "instruction, moral training and superintendence of education" as evidence of the "services" which might reasonably be expected to be received by the surviving minor.

The opinion of *In re Estate of Griffy* (1978), 64 Ill. App. 3d 504, 381 N.E.2d 755, which speaks to dependency as the measure of the distribution of damages awarded, reinforces the requirements found in the statute that the factors of damage to be considered by the jury must be of a pecuniary quality.

While the executors presently argue that the jury award of damages was inadequate in the light of the presumption of substantial damages to the widow and next of kin, that issue was not preserved in their post-trial motion.

For the reasons stated, I would affirm the judgment of the trial court.