JEAN GALLAGHER *v.* THE PEQUOT SPRING
WATER COMPANY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. CV 13-627-824

Argued October 7—decided December 4, 1963

*James M. Higgins,* of Manchester, for the appellant (defendant).

*Leroy E. Schober,* of Thompsonville, for the appellee (plaintiff).

KOSICKI, J. The plaintiff sued the defendant, a bottler and vendor of grape soda, for injuries sustained by her after consuming soda sold by the defendant, because of the presence in it of a foreign substance. The complaint was in two counts, one sounding in negligence and the other for breach of an implied warranty as to the merchantability of the soda and as to its fitness for the intended use.

The jury returned a general plaintiff's verdict for $2500. On motion to set aside the verdict, the court ordered a remittitur of $1000, which was filed, and judgment was entered on the verdict as modified. No interrogatories having been submitted or special verdict requested, the verdict, as remitted, if sustainable on either count cannot be disturbed. *McGuire* v. *Hartford Buick Co.,* 131 Conn. 417, 418; *Ziman* v. *Whitley,* 110 Conn. 108, 114, 115; Maltbie, Conn. App. Proc. § 55.

The following facts are not in dispute. The plaintiff was married on August 26, 1961, and a wedding reception was held at the Mount Carmel Hall. There were approximately 150 guests present, of whom about thirty were children. At the wedding dinner, the plaintiff's father poured for her some of the soda sold by the defendant. There were approximately fifteen people seated at the bride's table. The plaintiff consumed the soda as her father poured the remaining contents of the bottle for others at the table. While he was pouring, some of those at the table, other than the plaintiff and her mother, who were the only witnesses to testify for the plaintiff, exclaimed excitedly over a foreign substance which they variously described, within hearing of the plaintiff, as a "bloodsucker" or "cockroach." Neither the plaintiff nor her mother saw what was in the bottle. On trial, there was no identification of the substance other than a characterization of it by a defendant's witness as a "mold." The plaintiff became ill and retired to the ladies' room, where she vomited. She was unable to eat her dinner and left before the grand march took place. According to custom, the guests are expected to make gifts of money to the bride and groom in the course of the grand march, but because of the early departure of the plaintiff many of the guests also left and consequently some of the expected

gifts failed to materialize. Because of her illness, the plaintiff abstained from the joyous incidents of the nuptial night, abandoned the plans for her honeymoon, and a few days later returned to work.

Among the errors assigned by the defendant is error in the ruling of the court admitting in evidence, as exhibit 1, a soda bottle containing some unidentified substance. If the exhibit was admitted improperly, the error would be material because the jury then would have been permitted to accept as true the very fact which the plaintiff needed in order to establish the defendant's liability on either count. The exhibit was offered through Mrs. Alaimo, the plaintiff's mother, who, in the course of her direct examination, testified that the bottle was the one opened by her husband at the table where she sat about twelve feet from him. The defendant objected, stating as reasons that the substance in the bottle had not been identified, that there was no proof that the substance was in the bottle at the time of the alleged occurrence, that custody and care of the bottle until the date of trial had not been accounted for, and that a proper foundation had not been laid for admitting this item of evidence. The objection was overruled and the bottle admitted as a full exhibit. Upon further questioning, the witness testified as follows: "Q.— Now, did anything unusual happen while he was pouring from the bottle? A.—Yes, everybody—well, as he was pouring, they noticed this object in the bottle was moving around and they got up and there was quite a commotion. They was wondering what was in the bottle. The court: And while he was pouring this, some people noticed something? A.— Well, yes—you know—they were facing her table and as he was pouring it, someone nearby said something about a cockroach being in the bottle, or something, and they named other bugs and then

the people sitting in back walked up. They wanted to see what was in the bottle. Q.—Now, Mrs. Alaimo, can you tell me what actually this object in the bottle was? A.—I don't know, I mean—— Q.—Did you know at that time? A.—Everybody was saying different things—— Mr. Higgins: Objection, Your Honor. She is just not answering the question. The court: She doesn't know. Q.—Do you know at this time? A.—Well, I don't know—do you mean do I know what's in the bottle? Q.—Yes, A.—No, I don't know. I know something is in the bottle, but I don't know what it is. Q.—But this is the bottle as you saw it there? A.—Yes it is." On cross-examination, the witness stated that after the wedding reception her husband took the bottle home and later turned it over to a lawyer. Her husband had died some time before the trial.

The plaintiff, during her testimony, identified the bottle as being the one from which she had consumed soda poured by her father. "Q.—What did you do with the soda when you got it? A.—I drank it. Q.—Right away? A.—Yes. Q.—Now, did any incident occur while your father was pouring the soda in other people's cups? A.—Yes, it started an uproar. They saw something shaking around in the bottle, they said there was a bloodsucker, cockroaches, there was a lot of comments about what was in the bottom of the bottle. Q.—Now it's true that you don't know what is in that bottle now, isn't it? A.—No. Q.—Is that right? A.—Yes. Q.—And you didn't know what was in it—supposedly in it—at the reception, is that right? A.—No, that's right. Q.—And you consumed a cup of grape soda at the reception? A.—Yes. Q.—And thereafter, didn't you testify that some people around there saw something in the bottle? A.—Splashing around in the bottle. Q.—And they started making remarks? A.—Yes. Q.—And isn't that what

upset you? A.—No, that wasn't what upset me, no."

We have set down the testimony verbatim and at considerable length so that all of the evidence material to the issue raised by the defendant's objection may be examined in the light most favorable to the plaintiff. In laying a foundation for the receipt in evidence of the thing claimed to have caused the injury, it is ordinarily sufficient for the witness having knowledge of the object to identify it. See *Lestico* v. *Kuehner*, 204 Minn. 125. Exhibit 1 was admitted on identification of the bottle. It was not introduced to prove the identity of the bottle which had contained the beverage consumed but as real evidence of the purported substance which allegedly the beverage contained and which caused the plaintiff's illness and suffering. See 1 Wigmore, Evidence (3d Ed.) § 24. In order to justify its admission for that purpose, it was necessary first to show that it was the substance it purported to be, that is, that it was present in the bottle at the time of the occurrence, in a condition reasonably the same as that viewed at the trial, eighteen months later. The plaintiff had the burden of proving as a preliminary matter that the substance allegedly contained in the bottle at the time it was first opened was the same substance, without any material change, as that found in the bottle when it was offered as an exbibit. See *Wieland* v. *C. A. Swanson & Sons*, 223 F.2d 26 (2d Cir.). This is usually accomplished by showing original apperception of the object and then its care and custody under circumstances which would reasonably exclude any tampering with or material alteration in it so as to render the exhibit misleading—or, as in this case, the probability of chemical changes or organic growth resulting from environmental factors such as air, moisture and temperature. See *Jasper Coca Cola Bottling Co.* v. *Breed,*

40 Ala. App. 449, 452; 32 C.J.S., Evidence, §§ 601, 602, 607. The rule, however, is not so rigid as to render things sometimes called unique inadmissible unless absolute continuity of possession and the absence of tampering are first established. *Pasadena Research Laboratories, Inc.* v. *United States,* 169 F.2d 375, 380 (9th Cir.), cert. denied, 335 U.S. 853; *Anheuser-Busch, Inc.* v. *Southard,* 191 Ark. 107; *Coca-Cola Bottling Co.* v. *Adcox,* 189 Ark. 610. It is enough if the object offered in evidence has been reasonably identified as that sought to be proved, by someone who can testify of his own knowledge that the object proffered is the one claimed to have caused the result.

The questioned exhibit consists of a dark green quart bottle with a roughened surface, some liquid therein, and a substance described by one witness as a "mold." To see this substance at all requires observation at very close range in good light. It is plain that neither witness who identified the bottle had any knowledge of what was in it, other than soda, at the time the plaintiff partook of the contents. Neither of them examined the bottle at that time; they relied on what they heard, not on what they saw; no testimony was offered as to care and custody of the bottle and its contents; and no evidence supports the conclusion, obviously reached by the jury, that the substance they observed was the same as that which was allegedly present in the bottle when the soda was consumed by the plaintiff.

Although the exclamations of the guests, none of whom was called as a witness, might for some purposes be regarded as part of the res gestae, standing alone they cannot supply the required proof of a fact essential to the plaintiff's case. "The failure of the defendant by proper objection made, to prevent the introduction of the . . . [exclama-

tions] in evidence was not effective to transmute . . . [them] from inadmissible into competent testimony." *Danahy* v. *Cuneo,* 130 Conn. 213, 217. Such evidence, being hearsay, has no probative value. *Larke* v. *John Hancock Mutual Life Ins. Co.,* 90 Conn. 303, 306. The rule as to the admissibility of spontaneous utterances was not specifically asserted. This rule, as stated in *Perry* v. *Haritos,* 100 Conn. 476, does not appear to have been extended beyond the area of observable, external physical events directly causative of the injury claimed. See for illustration such cases as *Cascella* v. *Jay James Camera Shop, Inc.,* 147 Conn. 337, 341, and *Wade* v. *Yale University,* 129 Conn. 615, 618; also 6 Wigmore, Evidence (3d Ed.) § 1747; 20 Am. Jur., Evidence, § 674.

The objection of the defendant was well taken; a sufficient foundation had not been laid for the admission of exhibit 1 and its examination by the jury; and the error was harmful and prejudicial to the defendant.

The defendant assigns error in the following portion of the court's charge: "If you find that there was a foreign substance in the contents of this bottle, and that this was foreign to the soda, then you must find that this soda was not merchantable, not fit for human consumption and not suitable for the purpose for which it was intended. If you find this, then you must find that there was a breach of warranty that the law implies." This was the only instruction given to the jury on the issue of breach of implied warranty. The defendant had requested instructions relating to breach of duty, liability and proximate cause. Nothing substantially covering these aspects of the case was included in the charge and exception was taken. We consider the charge erroneous and inadequate for the following reasons:

(1) It directed the jury to find the ultimate fact, which lay within the exclusive province of the jury to determine on the evidence and the fair inferences to be drawn therefrom; (2) it omitted the necessity of the further finding that the foreign substance was in the bottle when it left the defendant's possession; it failed to instruct the jury to consider the evidence relating to the passage of the bottled soda through, and its custody in, several different hands; and (3) it failed to charge on proximate causation. *Riley* v. *Connecticut Co.,* 129 Conn. 554, 559.

The doctrine of res ipsa loquitur is not available in the case of an alleged breach of warranty. The mere presence in a beverage of a substance foreign to it may make it unmerchantable but need not render it unfit for human consumption. The substance in this case was never identified, nor was it shown to be of the same general nature and description as the plaintiff visualized it to be on hearing the exclamations of others. There was no evidence that the substance itself caused any physical injury to the plaintiff. The claimed injury, so far as the record discloses, could have been caused only through a psychological influence exerted on the plaintiff's alimentary system through a belief that the soda she had consumed came from a bottle containing a repulsive insect or leech. If her reaction had resulted from a sight of the foreign substance contemporaneously with the consumption, there is ample authority for a recovery for the breach. We have been directed to no case, and have been able to find none, where the alleged injury was caused, not by a perception of the foreign substance directly through the senses (as by sight, smell, taste, and touch), but through hearing a vivid description of it which may or may not have been true. We need not decide that absence of such sense-acquired knowledge would deprive an injured person of his remedy. But it would seem

indispensable that the persons actually viewing the foreign substance give proof of what they saw or that, under the circumstances, they were reasonably justified in their description of what they saw; that the party injured could reasonably accept what was said as true; and that, from that belief, the injuries resulted. To establish liability, the plaintiff must show by substantial evidence and with reasonable certainty that the cause for which the defendant is claimed to be liable produced the injury complained of; and if the evidence leaves it to conjecture the plaintiff must fail. See such cases as *Morse* v. *Consolidated Ry. Co.*, 81 Conn. 395, 399; *Mourison* v. *Hansen*, 128 Conn. 62, 65; *Kilduff* v. *Kalinowski*, 136 Conn. 405, 408; *Atkinson* v. *Coca-Cola Bottling Co.*, 275 S.W.2d 41, 44 (Mo. App.); see also note, 77 A.L.R.2d 7, §§ 32, 33, 34.

The defendant requested that the verdict be set aside and judgment be directed in its favor. "Finding error in the denial of the motion to set the verdict aside . . . , we cannot direct . . . a verdict for the defendant, but must order a new trial." *Edwards* v. *Grace Hospital Society*, 130 Conn. 568, 575; see *Robinson* v. *Southern New England Telephone Co.*, 140 Conn. 414, 421.

The disposition we make of this case permits us to comment on certain items of damage which apparently were accepted as being allowable. The plaintiff did not seek or receive professional medical care, and no expert medical testimony was produced. "The circumstances were not such as to make expert medical testimony essential, as claimed by the defendant. *Sapienti* v. *Walluch*, 127 Conn. 224, 227 . . . ." *Kilduff* v. *Kalinowski*, supra, 409; *Gannon* v. *S. S. Kresge Co.*, 114 Conn. 36, 39. There was no evidence of loss of earnings. The evidence of loss of reasonably expected wedding gifts, even

though supportable on some theory of quid pro quo, nevertheless, according to plaintiff's own best estimate, would not sustain an award of more than $200. In addition to testimony of nausea, distress, illness, pain and mental anguish, evidence was offered which would tend to show loss of consortium through temporary deprivation and postponement of the connubial privilege. It is settled law in this state that damages for loss of consortium which is caused by injuries negligently inflicted by a third party cannot be recovered by the uninjured spouse. *Lockwood* v. *Wilson H. Lee Co.,* 144 Conn. 155, 159; *Marri* v. *Stamford Street R. Co.,* 84 Conn. 9, 23-24 (citing *Feneff* v. *New York Cent. & H.R.R. Co.,* 203 Mass. 278). It has also been held by distinguished authority that consequential damages for loss of consortium for injuries resulting from negligence (and breach of implied warranty in the sale of trichinous pork) cannot be recovered by either spouse. *Gearing* v. *Berkson,* 223 Mass. 257, 260 (citing the *Feneff* case, supra); 15 Am. Jur., Damages, §§ 18, 19. Such loss, grievous though it may be, is not susceptible of judicial scrutiny and cannot be redeemed in a measurable pecuniary equivalent.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion DEARINGTON and KINMONTH, Js., concurred.