KENNETH BITNER, Plaintiff-Appellee, *v.* LESTER B. KNIGHT & ASSOCIATES, INC., *et al.*, Defendants-Appellants.

(No. 73-85;

Third District—January 30, 1974.

David Mueller, of Cassidy, Cassidy & Mueller, and Ross E. Morris, of McConnell, Kennedy, McConnell & Morris, both of Peoria, for appellants.

Moehle, Moehle, Reardon & Sincock, of East Peoria (Carl Reardon, of counsel), for appellee.

Mr. JUSTICE SCOTT delivered the opinion of the court:

This is an appeal from judgments entered by the circuit court of Peoria County in favor of Kenneth Bitner, the plaintiff, and against Lester B. Knight & Associates, Inc., a foreign corporation, hereinafter referred to as "Knight", and Jervis B. Webb Company, a foreign corporation, hereinafter referred to as "Webb." The action in the trial court also joined as defendant the O. Frank Heinz Construction Co., Inc.; however, the jury returned a verdict in favor of this defendant and against the plaintiff.

This appeal stems from a factual situation which had its beginning in 1964. In that year the Caterpillar Tractor Company employed Knight to conduct a feasibility study regarding a foundry to be located at Mapleton, Illinois. This study continued until 1966 when Knight entered into a contract with Caterpillar whereby architectural, engineering and construction management services were to be provided for the building of the plant at Mapleton. Knight was to design the plant and supporting systems and was also charged with the responsibility of seeing to it that

Caterpillar received what it contracted for from various contractors before their work was approved and accepted.

Knight wrote the performance specifications for a casting delivery and cooling system in the new plant. This entailed a conveyor system of large steel buckets, suspended from rollers riding on a steel rail and which were pulled by chain-operated drive units attached to and suspended from the structural steel in the building. The casting cooling gallery is a large unheated area through which the castings travel so they will be cooled before being delivered to a finishing area for clearing. In what we refer to as the casting cooling gallery, the structural steel beams from which the buckets are suspended are located at a 30-foot level. At a 21-foot level is other structural steel on which Knight specified a steel grating was to be installed so as to provide for a mezzanine floor. The purpose of this floor was to provide protection from falling castings as well as a means of access to the system for maintenance and repairs.

On January 13, 1966, as a cost reduction measure, Caterpillar made a unilateral decision to delete the installation of the mezzanine floor grating which had been specified by Knight. Knight was advised of this decision on January 18, 1966. It was Caterpillar's intention to use alternate means of access to the system for purposes of maintenance and repairs.

The defendant Webb designed, manufactured and erected the conveyor system. In September, 1967, Webb recommended to Caterpillar that an additional 1200 feet of maintenance and service platforms be installed in the casting cooling area at the 30 foot level. Caterpillar refused to approve this recommendation. The erection of the conveyor system by Webb was completed and in operation by early 1968. It was approved by Knight and subsequently accepted by Caterpillar in September of 1968. Caterpillar's contract with Knight was terminated January 31, 1969, and thereafter Caterpillar assumed the responsibility of dealing directly with all contractors.

The evidence discloses that when a problem arose with the conveyor system the employees would follow the dangerous practice of walking on steel I beams 8 inches wide in order to gain access to the conveyor system. It is abundantly clear that this method of gaining access to the conveyors was dangerous. A formal grievance was filed in January or February, 1969, with Caterpillar concerning this practice. It is apparent from the record that ladders or a "sky worker" (a device on wheels with a bucket and telescoping arm) could have been used by personnel to attain access to the conveyor system but walking the I beam was the quickest way to get access to the system.

Caterpillar sometime in the middle of the year 1969 decided to have

grating installed at the 21 foot level, as originally proposed by Knight and an order for the work to be performed by O. Frank Heinz was released in early 1969; however, Heinz was instructed to delay such installation until the winter shut down between Christmas and the New Year at the end of 1969 so as not to interfere with production.

The plaintiff Bitner is employed by Caterpillar as an electrician and had been employed in the maintenance department at the foundry approximately ten months prior to the date of the accident in question.

On October 18, 1969, while walking or working from one of the I beams at the 21 foot level, the plaintiff fell to the floor of the gallery below and was injured. On January 5, 1970, the plaintiff returned to work and O. Frank Heinz was at that time installing the mezzanine floor grating in the casting cooling gallery which includes the area where the plaintiff fell.

Further facts adduced from the evidence presented during the course of trial of this cause will be set forth as they relate to a determination of the issues presented by this appeal.

As we have previously stated, a jury found the defendants Knight and Webb guilty and assessed damages against them in the sum of $110,-000.00.

Before we direct our attention to the issues presented in this appeal it is necessary that we first examine pleadings filed in the trial court. At the very outset it should be noted that the complaint of the plaintiff contained several counts against three defendants. One of the defendants, namely, the O. Frank Heinz Construction Company, Inc., was charged with liability for violating the Structural Work Act (Ill. Rev. Stat., ch. 48, secs. 60 through 69); however, this defendant was found not guilty by the jury. The plaintiff's claim against Knight is that Knight failed to provide beam level flooring which led to the unreasonably dangerous use of a very high narrow I beam. The claim of the plaintiff against Webb is quite similar in that it charges this defendant with a duty to those who would make repairs on the conveyor system and this duty was violated by planning and approving the use of steel 8 inch I beams as platforms from which repairs could be made and in failing to design and install an adequate platform or catwalk.

We pay particular attention to the gist of the action set forth in the pleadings of the plaintiff in the light of certain instructions given to the jury by the trial court.

The trial court gave plaintiff's instruction number five consisting of Illinois Pattern Instruction 60.02 and which is based on chapter 48, section 68, Illinois Revised Statutes. The instruction was as follows:

"There is in force in the State of Illinois at the time of the occurrence in question a certain statute which provided that:

'It shall be the duty of all architects or draftsmen engaged in preparing plans, specifications or drawings to be used in the erection, preparing or altering of any building or structure to provide in such plans, specifications and drawings for all permanent structural features or requirements specified in the Structural Work Act.'

If you decide that one or more of the defendants violated the statute on the occasion in question, then you may consider that fact together with all the other facts and circumstances in evidence in determining whether or not the parties were negligent before and at the time of the occurrence. If you find that one or more of the defendants were negligent and that their negligence was a proximate cause of the injury to the plaintiff then it is not a defense that some third person may also have violated the statute and may also have been to blame."

■■ It is contended by both the defendants that the giving of this instruction constituted reversible error. With this contention we agree since we cannot conclude that based upon the facts in this case the plaintiff is within the class of persons intended to be protected by the Structural Work Act. In the footnotes relating to the use of an instruction relating to violation of a statute it is clearly directed that the instruction should be given:

"[O]nly where the evidence would support a finding * * * that the injured party is within the class intended to be protected by the statute or ordinance." (Illinois Pattern Jury Instructions 60.01, page 235, 1961).

In the instant case there was no evidence whatsoever adduced during the court of the trial that the plaintiff was involved in the construction, alteration or repair of any building or structure. In fact it is clear that he was an electrician employed by Caterpillar and at the time of the accident he was "coding" conveyor buckets. A factual situation quite similar to the one which we are considering appeared in the case of *Warren v. Meeker*, 6 Ill.App.3d 514, 285 N.E.2d 521. In *Warren* the plaintiff fell from a ladder attached to a grain silo which had been constructed approximately a year and a half before the accident by the defendant Meeker on the property of the defendant Davis, who was a farmer. The plaintiff was an employee of Davis and was attempting to repair the electrical hookup in order to operate the sweeping auger. The reviewing court affirmed the trial court's dismissal of the complaint which alleged

an action predicated upon a violation of the Structural Work Act. The appellate court's opinion analyzed the intent and purpose of the Structural Work Act and noted that the title to the act defines it to be: "An Act providing for the protection and safety of persons in and about the construction, repairing, alteration, or removing of buildings, bridges, viaducts, and other structures, and to provide for the enforcement thereof."

Section 60 of the Act provides:

"* * * All scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or construed by any persons, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon. * * *" Ill. Rev. Stat., ch. 48, sec. 60.

The reviewing court in *Warren* held that the silo or bin in question could qualify as a structure within the statute and that the ladder would meet the requirements of the Act, but the activity in which the plaintiff was engaged was not such as is described in section 60 or the definition of the Structural Work Act.

We believe that the case of *Warren* is controlling as far as the instant case is concerned to the effect that the plaintiff was not within the class of persons intended to be protected by the Act. We are aware of the many cases cited by the plaintiff in support of a contrary conclusion, however, with one exception, in all of such cases the plaintiff was in fact a "construction worker" as the term is commonly understood. The exception referred to is the case of *Bennett v. Musgrave*, 130 Ill.App.2d 891, 266 N.E.2d 128. This case is distinguishable in that the plaintiff, a nonemployee, was injured after being requested by the property owner to check the progress of a partially erected building then under construction. The injured plaintiff in the case of *Bennett* was in fact concerned with the construction of a structure, a factual situation not present in the case now before us.

■■ We believe that the giving of plaintiff's instruction number five relative to liability under the Structural Work Act could only serve to confuse a jury and prejudice the defendants as to their defense that the plaintiff was guilty of contributory negligence as a matter of law. We do

believe that the plaintiff was guilty of contributory negligence as a matter of law. He and other witnesses testified that as maintenance personnel it was customary for them to walk the narrow I beams as a means of gaining access to the casting cooling conveyor system. The plaintiff realized the danger of such a practice. He testified that he had almost fallen on one previous occasion. He was aware of the fact that grievances had been filed against Caterpillar relating to the dangerous practice of walking the beams, yet he continued a dangerous practice being conscious of the danger involved.

■■ An essential element of contributory negligence is that the person to be charged therewith knew, or by the exercise of ordinary care should have known, of the circumstance or condition out of which the danger arose. It is incompatible with the exercise of due care for one's own safety and protection under ordinary circumstances voluntarily to expose one's self to danger of which one is aware for the reason that ordinary prudent persons do not knowingly place themselves in position of peril or danger. (*Fore v. Vermeer Manufacturing Co.*, 7 Ill.App.3d 346, 287 N.E.2d 526.) That plaintiff exposed himself to a dangerous condition because he did not want to see the production of his employer slowed down does not absolve him of contributory negligence for this court also stated in the *Vermeer* case that mere fact an employee exposed himself to an abnormal risk because he feared that if he did not do this he would lose his position does not make his exposure to risk involuntary.

In the instant case it is abundantly clear from the record that the plaintiff conceded that he was aware of the danger involved in walking the I beams, yet he voluntarily exposed himself to this danger by placing himself in a position of peril and he was therefore guilty of contributory negligence as a matter of law.

Having made this determination of the plaintiff's guilt of contributory negligence it is unnecessary for us to consider the other issues raised by the defendants. We hereby reverse the judgments entered by the circuit court of Peoria County in favor of the plaintiff and against the defendants and remand this case to said court with directions to set aside the answer of the jury to the special interrogatoy presented to it and then to enter judgments of not guilty in favor of the defendants and against the plaintiff.

Reversed and remanded.

STOUDER, P. J., and DIXON, J., concur.