JOAN KELLY, Indiv. and as Adm'r of the Estate of Jack Kelly, Deceased, Plaintiff-Appellant, *v.* NORTHWEST COMMUNITY HOSPITAL *et al.*, Defendants-Appellees.

First District (4th Division)   No. 76-428

Opinion filed November 22, 1978.

Lawrence L. Kotin, Ltd., of Chicago (Lawrence L. Kotin, Dom J. Rizzi, and Michael W. Rathsack, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Dennis J. Horan and Stanley J. Davidson, of counsel), for appellee Northwest Community Hospital.

Goldenson, Kiesler, Berman & Brenner, of Chicago (Robert L. Kiesler, Stephen B. Frew, and Marvin D. Berman, of counsel), for appellee Mayfair Construction Company.

Garretson & Santora, of Chicago (Jerome H. Torshen and Edward G. Wierzbicki, of counsel), for appellee Schmidt, Garden & Erickson, Architects.

McKenna, Storer, Rowe, White & Farrug, of Chicago (Charles P. Menges, Robert S. Soderstrom, and Mairen K. Christenson, of counsel), for appellee Otis Elevator Company.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff, Joan Kelly, filed this action against the defendants, Northwest Community Hospital (Northwest or the hospital), Mayfair Construction Company (Mayfair), Schmidt, Garden & Erikson, Architects (Schmidt), and Otis Elevator Company (Otis). Plaintiff sought damages for the wrongful death of the decedent, Jack Kelly, alleging negligence on the part of defendants and violations of the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, par. 60 *et seq.*). On December 24, 1975, the circuit court of Cook County entered summary judgment in favor of all defendants. The plaintiff appeals and we affirm.

The sole issue presented for review is whether or not the trial court properly granted defendants' motions for summary judgment.

Prior to his death on January 21, 1972, Jack Kelly had been treated for mental illness and was hospitalized from March 1 to April 7, 1967, and again from February 18 to April 28, 1968. After his first period of hospitalization, Kelly remained home for 6 weeks, during which time he would become confused and disoriented. He had also been treated at his place of employment by a psychiatrist, Dr. Barchiesi, who prescribed tranquilizers for him during the period from 1968 to 1972.

On January 21, 1972, Kelly became nervous and agitated. He informed his wife, plaintiff Joan Kelly, that he was getting sick. He called his employer and said he would not be in to work. Dr. Barchiesi prescribed tranquilizers for Kelly over the telephone and made an appointment to see him on January 24. At approximately noon on January 21, plaintiff left the house to obtain the prescribed tranquilizers. At that time, her husband was anxious and nervous. She spoke to him several minutes later over the telephone from the pharmacy where she had encountered some delay in filling the prescription. Kelly informed her that he wished to go in search of Dr. Barchiesi himself. She asked him to wait for her to return home, but he did not do so.

At this time, defendant Northwest was constructing a new building as an addition to its existing hospital in Arlington Heights, Illinois. Defendant Mayfair was the general contractor, defendant Schmidt was the architect, and defendant Otis was the elevator subcontractor for this construction. Kelly had been to Northwest for medical treatment on several occasions prior to the date of his death. Kelly was last observed alive on January 21, 1972, when he parked his car in the parking lot at Northwest and walked into the main front entrance of the old hospital

building. Subsequently, a scream was heard and a body was observed in the air in the vicinity of the sixth floor at the north end of the building under construction. Kelly's body was found in a courtyard, bounded on the south by the building under construction, between the hours of noon and 1 p.m. Plaintiff's lawsuit was subsequently filed against Northwest and its contractors and subcontractor.

Plaintiff alleged in her second amended complaint that the defendants were guilty of the following negligent acts or omissions:

> "(a) Carelessly and negligently managed, maintained and controlled the aforesaid premises and/or their activities thereon so that as a direct and proximate result thereof, plaintiff's decedent sustained injury which resulted in his death.
>
> (b) Allowed free access by plaintiff's decedent * * * to the floors under construction by means of a certain passenger elevator which served floors then in use.
>
> (c) Failed to erect adequate guard rails, barricades or other devices to keep plaintiff's decedent or others from falling from said structure.
>
> (d) Failed to adequately and properly warn plaintiff's decedent of the dangerous condition created by defendants' activities, of which dangerous condition defendants, and each of them, knew or should have known.
>
> (e) Failed to keep plaintiff's decedent from falling from said structure.
>
> (f) Carelessly and negligently created a hazardous condition by their activities on said premises, of which condition defendants, and each of them, knew or should have known could cause injury to plaintiff's decedent and others upon said premises.
>
> (g) Carelessly and negligently caused plaintiff's decedent to fall from said structure.
>
> (h) Failed to restrict access to the floors under construction so that plaintiff's decedent and others could not mistakenly walk onto said floors."

Plaintiff further alleged in count III of the complaint that defendants willfully violated the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, par. 60) by failing to provide adequate supports, barricades and handrails at the construction site.

Defendants filed their motions for summary judgment and the trial court sustained these motions. Apparently, after construing the pleadings and supporting affidavits most strongly against the movants (23 Ill. L. & Prac. *Judgments* §77 (1956)), the trial court found that no genuine issue existed as to any material fact, and the moving parties were entitled to a

judgment as a matter of law (Ill. Rev. Stat. 1975, ch. 110, par. 57(3)). We must affirm the decision of the trial court.

■■■ First, we find that section 1 of the Structural Work Act (Ill. Rev. Stat. 1971, ch. 48, par. 60) is not applicable to this case, *i.e.*, that Jack Kelly was not a protected person under the Act. Section 1 provides as follows:

> "That all scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any person or persons employed or engaged thereon, or passing under or by the same, and in such manner as to prevent the falling of any material that may be used or deposited thereon."

The primary purpose of the Structural Work Act is to secure for construction workers a safe place to work and a remedy for injuries suffered by employees at the hazardous construction site. (*Marcus v. Green* (1973), 13 Ill. App. 3d 699, 707, 300 N.E.2d 512, 517.) The Illinois Supreme Court has recognized the intention of the legislature to limit application of the Act to the classes of persons and things enumerated therein (*Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436, 328 N.E.2d 318, 320), and has apparently rejected the premise that all construction related incidents are covered. (*Crafton v. Lester B. Knight & Associates, Inc.* (1970), 46 Ill. 2d 533, 536, 263 N.E.2d 817, 819.) In the instant case, Kelly certainly was not employed as a worker on the construction site and was not engaged in any legitimate activity at the site. It is also apparent from the language of section 1 that it was intended to protect those passing under or by the construction site from falling objects due to ineffectively secured construction equipment. Plaintiff contends that Kelly comes within the purview of the statute, in that he was passing under or by the construction site at the time of the injury. However, we cannot sustain plaintiff's position under the circumstances where Kelly, of his own volition, entered the construction site and traveled through the incomplete building, journeying upward until he reached, at least, the sixth floor and then fell or jumped. *Lavery v. Ridgeway House, Inc.* (1969), 117 Ill. App. 2d 176, 185, 254 N.E.2d 117, 121-22.

■■ Next, we find that Schmidt, as architect, was not liable to plaintiff as a matter of law. Generally, the duties and responsibilities of an architect are determined by the contract of employment. (See *Miller v. DeWitt* (1967), 37 Ill. 2d 273, 226 N.E.2d 630.) The employment of an architect is

ordinarily a matter of contract between the parties, and the terms of the employment are therefore governed by the terms of the contract entered into. The duties of the architect may be limited to the preparation of plans and specifications, or they may include, in addition, supervision of construction. (5 Am. Jur. 2d *Architects* §5 (1962).) It has been held that the general duty to "supervise the work" merely creates a duty to see that the building when constructed meets the plans and specifications contracted for. (*Miller,* at 284.) We believe that absent a provision in the employment contract charging the architect with administration of the construction contract, control of methods or techniques of construction used, and the authority to stop the work when necessary, the architect cannot be charged with a duty to provide safety precautions or programs at the construction site. (See *Miller.*) Here, the terms of the employment contract between Schmidt and Northwest were, in pertinent part, as follows:

> "The Architect shall make periodic visits to the site to familiarize himself generally with the progress and quality of the Work and to determine in general if the Work is proceeding in accordance with the Contract Documents. On the basis of his on-site observations as an Architect, he shall endeavor to guard the Owner against defects and deficiencies in the Work of the Contractor. The Architect shall not be required to make exhaustive or continuous on-site inspections to check the quality or quantity of the Work. The Architect shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, and he shall not be responsible for the contractor's failure to carry out the Work in accordance with Contract Documents."

Under the circumstances, we find that the trial court was correct in finding that Schmidt was not liable to plaintiff as a matter of law.

■■ Finally, a careful review of the record reveals no evidence that any of the instant defendants were negligent with respect to the maintenance of the construction site and the safety precautions employed thereon, or that any negligence on the part of defendants contributed in anyway to the death of Jack Kelly. Apparently, at the time of the occurrence, the new building was obviously still under construction and was not open to the public. There were no finished walls or ceilings. Construction materials were piled on the floors. The heating vents, piping and electrical conduits were totally exposed. Sections of outside wall at the north end of the building were deliberately left out, so as to retain necessary access to the material hoist which was used to deliver material to the various floors of the building. A fence separated the open public parking lot from both the

construction parking lot and the construction area itself. A sign was posted at the construction parking lot which stated "Construction parking only" or "Construction Personnel only." There was also a sign on the exterior of the building under construction which stated "No trespassing, illegal entry without a hardhat." It is not certain how Kelly entered the new building, but access to the building from the old hospital building was all but impossible. The corridors in the old building had been barricaded so that patients and others could not travel from the old hospital building to the building under construction. The barricades were 8 feet in height and 4 feet wide, and completely blocked the openings between the two buildings. The barricades were locked from the new building so as to prevent access from the old building. Although plaintiff insists that the elevators in the new building were operational, the record indicates otherwise. Apparently only one elevator was in operating condition and this elevator could only be operated by Otis personnel who possessed a special key. Under the circumstances, the trial court correctly determined that the defendants were not liable to plaintiff as a matter of law. See 62 Am. Jur. 2d *Premises Liability* §280 (1972).

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and ROMITI, JJ., concur.