EILEEN MARTIN, Plaintiff-Appellant, *v.* KIENDL CONSTRUCTION CO. *et al.*, Defendants-Appellees.—GERALDINE SAUER, Plaintiff-Appellant, *v.* R. T. MILORD COMPANY *et al.*, Defendants-Appellees.

First District (3rd Division)   Nos. 79—1709, 79—1752 cons.

Opinion filed March 17, 1982.—Rehearing denied August 26, 1982.

RIZZI, J., dissenting.

James M. Harman, of Doyle & Ryan, Ltd., of Chicago, for appellant Geraldine Sauer.

Joseph T. McGuire and Stephen C. Schulte, both of Perz & McGuire, of Chicago, for appellant Eileen Martin.

Frank Glazer and G. A. Lewis, both of Frank Glazer, Ltd., of Chicago, for appellee Kiendle Construction Co.

D. Kendall Griffith, Thomas M. Crisham, and Kevin R. Sido, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago, for appellee R. T. Milord Company.

JUSTICE McNAMARA delivered the opinion of the court:

In these consolidated appeals we are asked to decide whether the wife of a living, injured workman, who himself brought an action for damages pursuant to the Structural Work Act, may recover for loss of consortium under the Act.

Plaintiffs' husbands brought actions against defendants under the Act for damages sustained when they fell from scaffolding. Plaintiff Sauer sought damages for loss of consortium premised on the Act and on a negligence theory. Plaintiff Martin sought damages for loss of consortium premised solely on the Act. The trial court held that the Act cannot provide the spouse of an injured worker with an action for loss of consortium. The court then dismissed those portions of plaintiffs' actions which were based on the Act. Plaintiffs appeal. Sauer originally contended that the Act is unconstitutional in failing to provide for an action for loss of consortium, but has expressly waived that argument.

Sauer now maintains that the spouse of an injured worker is a protected person under the terms of the Structural Work Act. We disagree. The purpose of the Act clearly is to compensate the worker for injuries sustained upon an unsafe workplace. (*Crothers v. La Salle Institute* (1977), 68 Ill. 2d 399, 370 N.E.2d 213.) The title of the Act is as follows:

"An Act providing for the protection and safety of *persons in and about* the construction, repairing, alteration, or removal of buildings, bridges, viaducts, and other structures, and to provide for the enforcement thereof." (Emphasis added.)

Section 1 (Ill. Rev. Stat. 1975, ch. 48, par. 60) provides:

"[A]ll scaffolds, hoists, cranes, stays, ladders, supports, or other mechanical contrivances, erected or constructed by any person, firm or corporation in this State for the use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, or other structure, shall be erected and constructed, in a safe, suitable and proper manner, and shall be so erected and constructed, placed and operated as to give proper and adequate protection to the life and limb of any *person or persons employed or engaged thereon, or passing under or by the same*, and in such manner as to prevent the falling of any material that may be used or deposited thereon." (Emphasis added.)

Section 9 (Ill. Rev. Stat. 1975, ch. 48, par. 69) recites in pertinent part:

"For any injury to person or property occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such wilful violation or wilful failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children; or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives."

Section 9 is to be read along with section 1 so that "any person" in section 9 means any person delineated in section 1. Hence, in the absence of an allegation that the present plaintiffs were injured while employed on or passing under scaffolding or that their spouses were killed while so employed, they are clearly outside the scope of the Act's protection. (*Kelly v. Northwest Community Hospital* (1978), 66 Ill. App. 3d 679, 384 N.E.2d 102; *Bitner v. Lester B. Knight & Associates, Inc.* (1974), 16 Ill. App. 3d 857, 307 N.E.2d 136; *Lavery v. Ridgeway House, Inc.* (1969), 117 Ill. App. 2d 176, 254 N.E.2d 117.) The Act does not grant the spouse of a living, injured worker a right of action for loss of consortium.

Unlike Sauer, Martin contends that the Act neither confers nor bars her action for loss of consortium. She maintains that a common

law action for loss of consortium automatically arises in a spouse whenever the other spouse suffers a bodily injury for which the latter may recover, even if the basis for the latter's recovery is statutory. A brief discussion of the common law remedy for impairment of consortium is necessary. When a spouse is intentionally or negligently injured, the physical injury may indirectly impact on the marriage relationship, depriving the noninjured spouse of the other's services, affection or companionship. In such a case, the deprived spouse may sue for loss of the injured spouse's consortium. The remedy clearly seeks a societal vindication of a wrong done to the family unit, and not compensation for an injury. (*Cf. Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881.) In language pertinent to this issue, Roscoe Pound has stated:

"The actual pecuniary damages in these cases is relatively small, as we recognize in permitting large verdicts by way of punitive damage where there is a wanton injury. \* \* \* Where specific redress and prevention are impossible and money redress will cover but a small part of the wrong, the infliction of a penalty, which tends in some measure to satisfy the feelings of the injured person and at the same time vindicates the social interest against such wrongs in general is the sole recourse left open to the law." Pound, *Individual Interests in the Domestic Relations*, 14 Mich. L. Rev. 177, 190 (1916).

The English common law recognized a loss of consortium action in the husband for loss of his injured wife's services, and based the right on the concept that the wife was the husband's chattel. Since historically the wife could not sue or be sued in her own name she was, for all legal purposes, merged into the entity of her husband. Hence, an injury to the wife, the husband's chattel, was for all purposes an injury to the husband. (See *Dini v. Naiditch.*) After passage of legislation which recognized the wife as a separate legal entity, and which necessarily ended the concept of the wife as the husband's property, some jurisdictions refused to recognize the efficacy of the husband's action for loss of consortium. See, *e.g., Gallagher v. Pequot Spring Water Co.* (1963), 2 Conn. Cir. 354, 199 A.2d 172; *Helmstetler v. Duke Power Co.* (1945), 224 N.C. 821, 32 S.E.2d 611; *Rodgers v. Boynton* (1943), 315 Mass. 279, 52 N.E.2d 576.

In 1958, the Illinois Supreme Court held that a surviving spouse and a minor child could not maintain a common law action for impairment of consortium caused when the defendant negligently and fatally injured the deceased. (*Hall v. Gillins* (1958), 13 Ill. 2d 26, 30, 147 N.E.2d 352.) The court stated:

"But the common law has characteristically imposed close lim-

its upon the parties entitled to sue. *If the deceased in this case had survived, for example, his injuries might have been such as to inflict upon these plaintiffs deprivations of the same kind and of equal severity. Yet the only person entitled to recover would be the injured man himself.*" (Emphasis added.)

Yet, in 1960, responding to an equal protection type argument, our supreme court recognized the right of a wife to recover loss of consortium damages for the negligent infliction of injury to a living husband. (*Dini v. Naiditch.*) The *Dini* court expressly reserved the question, raised by the passage of the Married Women's Act, whether a husband's action for loss of consortium was viable in modern law. The court stated:

"Inasmuch as we are not called upon to adjudicate the husband's claim, we need not consider that novel theory which would remedy the arbitrary denial of a cause of action to one partner by denying it also to the other one; nor can we predicate our interpretation of the common law on the supposition that one day a court will be able to equalize the situation by striking down the husband's action. Nor do we find that in Illinois the concept of 'consortium' is ready for the discard pile. On the contrary, its vitality was reaffirmed in *Heck v. Schupp* [citation], where we held unconstitutional a statute abolishing the action for alienation of affection, which involves this precise concept." (20 Ill. 2d 406, 428.)

A dissent maintained that the remedy for loss of consortium for negligent injury to either spouse is insupportable in the law.

It is notable that the tort of alienation of affection, which the *Dini* court stated involves the concept of deprivation of consortium, requires an intentional interference with the family unit. Moreover, subsequent to the *Heck v. Schupp* holding, our legislature sharply curtailed the extent of a spouse's recovery for loss of consortium-type damages in an alienation of affection action. The statute was amended limiting recovery to actual damages; actual damages within the statute include pecuniary loss resulting from loss of services but exclude damages for loss of companionship, felicity and sexual intercourse. See *Coulter v. Renshaw* (1981), 94 Ill. App. 3d 93, 418 N.E.2d 489.

The tort rationale for imposing liability on a defendant for loss of consortium damages is grounded on a duty and not a causation analysis. In the time-honored case of *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99, Judge Cardozo held that negligence as to one person which ultimately and in fact injures another to whom no duty is owed is not negligence as to the latter person. In his dissenting opinion, Judge Andrews argued for the imposition of liabil-

ity based on a test of proximate cause. As illustration of this principle in the law, he cited the husband's remedy for loss of consortium against a negligent defendant. Our supreme court continues to reject Judge Andrews' strict causation approach, however, and continues to apply Judge Cardozo's analysis of duty to define the limits of tort liability. (See *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250.) In *Renslow*, the court defined duty as "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." (67 Ill. 2d 348, 356.) As illustration that duty and not causation underlies tort liability, the *Renslow* court reconciled Judge Andrews' use of the remedy for loss of consortium with a duty analysis. The court stated that a spouse's remedy for loss of consortium exemplifies the concept of "a limited area of transferred negligence," much like the transferred intent doctrine. (67 Ill. 2d 348, 356.) Hence, a spouse may recover for deprivation of consortium in cases of negligence not because an injury is suffered in fact, but because courts have made the policy decision that the duty to act with reasonable care should be transferred to the deprived spouse.

Applying these principles to the present case, we do not believe, as Martin suggests, that a spouse's right of action for impairment of consortium arises automatically whenever physical harm befalls the other spouse. Absent a duty owed by the defendant to plaintiff, there can be no recovery despite any adverse impact on the noninjured spouse's relational interests. We do not agree with the suggestion that duty is not the issue here and that the common law remedy for loss of consortium was never dependent on an additional duty owed the deprived spouse. *Palsgraf* and *Renslow* dictate the conclusion that duty is the bulwark of tort liability. And *Renslow* establishes that a single duty may supply the basis for tort liability to both the injured and the deprived spouse but only when, by judicial fiat, the duty owed the former is "transferred" to the latter. Hence, the issue before us is whether the duty created by the legislature in the Structural Work Act and owed to the injured worker ought to be transferred by judicial decision to the spouse of a living, injured worker.

We conclude that the duty created by the legislature in the Structural Work Act cannot be transferred by judicial decision to third persons outside the Act's protection despite the intimacy of their relationship to protected persons. In creating a statutory standard of care in derogation of the common law, the legislature was entitled to define the class of persons intended to be protected and to exclude others from protection. We have stated that the Act was

intended to protect only those injured in and around the workplace and not to protect the spouse of an injured worker. The common law remedy for impairment of consortium reflects policy considerations so distinct from the purposes of the Structural Work Act that transferral of the duty under the latter to the former would be an impermissible extension of the Act to persons and interests outside its scope. (See *Wright v. Synergistics, Inc.* (1977), 52 Ill. App. 3d 233, 367 N.E.2d 466.) Nestling the standards of the Act within a common-law action does not alter our conclusion that plaintiffs are outside the Act's protection. Plaintiffs cannot accomplish indirectly what cannot be done directly.

We believe that plaintiffs' attempt to utilize a statute is dispositive in the present case. Our courts have repeatedly refused to permit recovery of loss of consortium damages when to do so would require a judicial extension of the terms of a statute. (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157 (loss of consortium not recoverable under dram shop statute); *Kaiserman v. Bright* (1978), 61 Ill. App. 3d 67, 377 N.E.2d 261 (loss of consortium damages not available under wrongful death statute); but see *Elliott v. Willis* (1980), 89 Ill. App. 3d 1144, 412 N.E.2d 638.) *Elliott* merely involves the question whether loss of consortium is a "pecuniary injury" within the meaning of the Wrongful Death Act. Unlike the present case, it was undisputed in *Elliott* that plaintiff was a protected person under the statute, and indeed the *Elliott* plaintiff brought a statutory, not a common law, action. The case does not involve the issue presented here whether a plaintiff not protected by a statute may nevertheless invoke its standards in a common law action.

The New York case of *Heil v. F & M Schaefer Brewing Co.* (1975), 365 N.Y.S.2d 247, 47 App. Div. 2d 754, *aff'd without opinion* (1976), 38 N.Y.2d 935, 382 N.Y.S.2d 986, 346 N.E.2d 824, relied upon by plaintiff Martin, is totally unpersuasive. Without opinions, judgments for plaintiffs husband and wife were affirmed in an action based on both a structural work statute and negligence. Since no opinions were issued, there is no indication that the judgments were predicated on the right to recover for loss of consortium under a structural work act. Indeed, language contained in a dissent indicates that the judgments were predicated on the negligence count.

For the reasons stated, the judgment of the circuit court of cook County is affirmed.

Judgment affirmed.

WHITE, P. J., concurs.

JUSTICE RIZZI dissenting:

I respectfully dissent from the conclusion of the majority that the plaintiffs do not have an action for loss of consortium. In my opinion, if a defendant's wilful violation of the Structural Work Act results in a tortious interference with the familial relationship between spouses, the spouse of the injured person has a common law cause of action against the defendant for loss of consortium.[1] I would reverse the dismissal of the loss of consortium actions in these two cases and remand the cases for trial.

An action for loss of consortium has always been recognized as a common law cause of action. (See *Dini v. Naiditch* (1960), 20 Ill. 2d 406, 421-30, 170 N.E.2d 881, 888-93.)[2] Plainly, the existence of the action was never dependent upon the co-existence of any statutory right given to the spouse of the injured person. Nor has the existence of the action ever been dependent upon an "additional" duty other than the duty owed by the tortfeasor to the person injured by the tortfeasor. Rather, the action has always existed solely because of the defendant's tortious interference with the familial relationship between spouses. See Prosser, Torts secs. 124, 125, at 873-97 (4th ed. 1971).

Thus, to me, an action for loss of consortium should not be allowed or denied by determining whether the tortious interference with the familial relationship is premised upon the defendant's violation of a statute. For this reason, in my opinion, no words of the Structural Work Act are needed to give a spouse a right to recover for loss of consortium. The right to recover for loss of consortium exists by virtue of the defendant's tortious interference with the familial relationship.[3]

---

[1]In the present cases, although the loss of consortium counts are not delineated as common law causes of action in the pleadings, the operative facts are sufficiently pleaded to treat the loss of consortium counts as alleging common law actions for loss of consortium.

[2]The *Dini* court stated that consortium includes, in addition to support, "elements of companionship, felicity and sexual intercourse, all welded into a conceptualistic unity." 20 Ill. 2d 406, 427, 170 N.E.2d 881, 891.

[3]The right to recover for the tortious interference with the familial relationship will, of course, depend upon the existence of tortious conduct on the part of the defendant. Normally, this means that there must be a tort for which an action might be maintained

In the present case, I do not find the reasoning of the majority persuasive, and I do not find the cases relied upon by the majority apposite. As an example, the majority states, "The tort rationale for imposing liability on the defendant for loss of consortium damages is grounded on a duty and not a causation analysis." In support of this statement, the majority cites and discusses *Palsgraf v. Long Island R.R. Co.* (1928), 248 N.Y. 339, 162 N.E. 99, and *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 367 N.E.2d 1250. I believe that the present case does not involve a conflict between a duty and a causation analysis. Moreover, in my opinion, the existence of a duty or causation is not the issue.[4] A loss of consortium action is based upon the traditional common law precept that the duty owed by a tortfeasor to the person injured includes a duty to the injured person's spouse, *viz.*, not to tortiously interfere with the familial relationship. In this same regard, it has long been recognized that a duty may exist to one foreseeably harmed even though the person harmed may be unknown and remote in time and place. *Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 357, 367 N.E.2d 1250, 1254-55; *Wintersteen v. National Cooperage & Woodenware Co.* (1935), 361 Ill. 95, 103, 197 N.E. 578, 582.

On this same point, the majority cites *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 174 N.E.2d 157, for the statement that "loss of consortium [is]

---

by the injured party. However, there is ample evidence that, historically and at present, the tortious interference action is an independent one, and is not necessarily controlled by the disposition of the case by the injured party. The use of the threadbare fictions of the tort being a "derivative action" or based on "imputed negligence" or being a tort in which "there is only one cause of action in two parties" is not, in my opinion, based on sound reasoning and is generally condemned by writers on the subject. It follows that in a loss of consortium action, the spouse's recovery should not be precluded because of any personal defenses that may exist against others, including the injured party, except to the extent that the facts relating to those defenses go to the issue of proximate cause in the loss of consortium action. (See Prosser, Torts sec. 125, at 889, 891-93 (4th ed. 1971).) Viewing the situation realistically from a modern-day perspective, the injuries to the spouse in a loss of consortium case constitute very real injuries and, indeed, may in some instances exceed the severity of the injuries to the injured person. Thus, to the extent the spouse's injuries are proximately caused by a defendant's tortious conduct, it is only fair and in accordance with basic legal principles that the spouse recover for those injuries regardless of any personal defenses that may exist against others.

[4]Causation is preeminently an issue of fact. (*Renslow v. Mennonite Hospital* (1977), 67 Ill. 2d 348, 369, 367 N.E.2d 1250, 1260 (Dooley, J., concurring).) Since this matter is not before us on any factual dispute, there is no question of causation involved here.

not recoverable under [the] dram shop statute." However, the fact that loss of consortium is not recoverable against a Dramshop Act defendant is not relevant here because, unlike the Structural Work Act, "[u]nder the Liquor Control Act \*\*\* the defendant's liability is not based on fault."[5] (*Knierim v. Izzo* (1961), 22 Ill. 2d 73, 78-79, 174 N.E.2d 157, 160-61.) This sharp contrast between the two statutes is made clear by what the court stated in *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, when it compared the statutes:

> "In sharp contrast to the language in [the Structural Work Act] is the phraseology of the Liquor Control Act (Ill. Rev. Stat. 1959, chap. 43, par. 135,) in which the legislature, in order to effectuate a public purpose, imposed in unequivocal terms liability on the owner irrespective of his control over or participation in the tortious act. \*\*\*

> The Dram Shop Act was enacted prior to the Scaffold Act, and in the absence of such clear language in the Scaffold Act indicating an intention to impose a nondelegable duty on the owner, we do not believe that such a departure from recognized bases of liability can be inferred." 22 Ill. 2d 305, 321, 175 N.E.2d 785, 793.

Together, the *Knierim* and *Gannon* cases manifest that, unlike the Dramshop Act, liability under the Structural Work Act is based on fault. Further, this critical difference between the two statutes demonstrates why a common law loss of consortium action can be premised on a defendant's violation of the Structural Work Act although it cannot be premised on a defendant's violation of the Dramshop Act. To me, if liability under a statute is based on fault which results in a tortious interference[6] with the familial relationship between spouses, the spouse of the injured person has a common law cause of action against the defendant for loss of consortium. However, if liability under a statute is not

---

[5]Liability under the Structural Work Act is based on fault. Indeed, the statute imposes liability only for wilful violations committed by persons having charge of the work. (Ill. Rev. Stat. 1975, ch. 48, par. 69; *Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.* (1961), 22 Ill. 2d 305, 321, 175 N.E.2d 785, 793; *Huckabee v. Bell & Howell, Inc.* (1970), 47 Ill. 2d 153, 157-58, 265 N.E.2d 134, 137.) A wilful violation exists if a party in charge of the work knows of the dangerous condition or by the exercise of reasonable care could have discovered the existence of the dangerous condition, and does not correct the condition. *Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 129-30, 171 N.E.2d 60, 67; *Westerfield v. Arjack Co.* (1979), 78 Ill. App. 3d 137, 142, 397 N.E.2d 451, 456.

[6]A tort is defined in the American Heritage Dictionary of the English Language 1355 (1975) as follows: "*Law.* Any wrongful act, damage, or injury done willfully, negligently, or in circumstances involving strict liability, but not involving breach of contract, for which a civil suit can be brought."

based on fault, then there would be no tortious interference with the familial relationship of the spouse.

The majority next cites *Kaiserman v. Bright* (1978), 61 Ill. App. 3d 67, 377 N.E.2d 261, for the proposition that "loss of consortium [is] not available under [the] wrongful death statute." However, in *Elliott v. Willis* (1980), 89 Ill. App. 3d 1144, 1148-49, 412 N.E.2d 638, 642, *appeal allowed* (1981), 83 Ill. 2d 570, the court refused to accept the holding in *Kaiserman* and expressly declined to follow it. I agree with the court in *Elliott*. In *Elliott*, the court stated:

> "*Dini v. Naiditch* (1960), 20 Ill. 2d 406, 170 N.E.2d 881, held that a wife could maintain an action for lost consortium resulting from the nonfatal injuries to her husband. Thus, with recovery for consortium permitted when a spouse is merely injured, logic dictates that recovery be allowed when death occurs. The only basis in Illinois for excluding consortium as an element of loss when death occurs is that the suit must be brought under the Wrongful Death Act; the action approved in *Dini* was nonstatutory. Yet in the case of death, the harm inflicted upon the marital relationship is more final and generally greater. Furthermore, the existence of the statute should not be viewed as an obstacle to compensation; the cases have emphasized its remedial nature and invite us to interpret it as permitting compensation for consortium." 89 Ill. App. 3d 1144, 1146-47, 412 N.E.2d 638, 640.

Here, the Structural Work Act should not be viewed as an obstacle to a common law action for loss of consortium since the Act is not and never was intended to be an exclusive remedy.[7] (Illinois Pattern Jury Instructions, Civil, No. 180.00 (Structural Work Act), Introduction, at 466 (2d ed. 1972).) Moreover, unfair and illogical results would occur if recovery for loss of consortium is denied. To illustrate, if a worker is injured and dies months later as a result of a defendant's wilful violation of the Structural Work Act, his administrator could maintain an action under the Wrongful Death Act (Ill. Rev. Stat. 1979, ch. 70, pars. 1, 2) on be-

---

[7]In addition to a claim under the Structural Work Act, an injured worker may maintain a workmen's compensation claim against his employer and a common law action against others (IPI Civil No. 180.00, at 466), as well as a common law action against the same defendant under the Structural Work Act action (*Huckabee v. Bell & Howell, Inc.* (1970), 47 Ill. 2d 153, 265 N.E.2d 134). Also, an action brought under the Wrongful Death Act may be maintained against a defendant for a wilful violation of the Structural Work Act. *Thomas v. Carroll Construction Co.* (1957), 14 Ill. App. 2d 205, 144 N.E.2d 461; see also *Li Petri v. Turner Construction Co.* (1967), 36 Ill. 2d 597, 602, 224 N.E.2d 841, 845, where the court cited *Thomas*. Further, I am of the opinion that a separate action for funeral expenses may be brought by the decedent's spouse individually or by the personal representative of the estate if the death was caused by defendant's wilful violation of the Structural Work Act. *Cf. Saunders v. Schultz* (1960), 20 Ill. 2d 301, 310, 170 N.E.2d 163, 168.

half of the worker's surviving spouse and next of kin (*Thomas v. Carroll Construction Co.* (1957), 14 Ill. App. 2d 205, 144 N.E.2d 461), and the worker's spouse could recover under the Wrongful Death Act for loss of consortium resulting from the worker's death (*Elliott v. Willis* (1980), 89 Ill. App. 3d 1144, 1147, 412 N.E.2d 638, 641). With recovery for loss of consortium permitted when a worker is killed because of a defendant's wilful violation of the Structural Work Act, logic and fairness dictate that recovery be allowed for the spouse's loss of consortium prior to the time the worker died as a result of the accident, *i.e.*, a spouse should be allowed to bring a common-law action for loss of consortium resulting from a worker's nonfatal injuries because of a defendant's wilful violation of the Structural Work Act.

Lastly, the majority also relies on *Wright v. Synergistics, Inc.* (1977), 52 Ill. App. 3d 233, 367 N.E.2d 466. I do not find that case applicable. There was no loss of consortium or analogous action involved in *Wright*. In *Wright*, the sole issue was whether the injured plaintiff's activity at the time of the accident was covered under the Structural Work Act. Here, there is no issue as to whether the workmen's activities were covered under the Structural Work Act.

Accordingly, I believe that if a defendant's wilful violation of the Structural Work Act results in a tortious interference with the familial relationship between spouses, the spouse of the injured person has a common law action against the defendant for loss of consortium. Therefore, I would reverse the dismissal of the loss of consortium actions and remand the cases for trial.